Kimberly **CONSTANT,** Plaintiff,

v.

**WYETH; Wyeth, Inc.; American Home Products Corporation; A.H. Robins Company, Inc.; Wyeth–Ayerst Pharmaceuticals, Inc., f/k/a Wyeth–Ayerst Laboratories, Inc.; Wyeth Pharmaceuticals, f/k/a Wyeth–Ayerst Laboratories; and James W. Johnson, M.D.; Defendants.**

No. CIV. 3:03–0052.

United States District Court, M.D. Tennessee, Nashville Division.

April 9, 2003.

Ray H. Berk, Nashville, TN, for Plaintiff.

Paul R. Leitner, Leitner, Williams, Dooley & Napolitan, PLLC, Donna L. Pierce, F. Laurens Brock, Chambliss, Bahner & Stophel, P.C., Chattanooga, TN, Reid Daniel Leitner, Leitner, Williams, Dooley, and Napolitan, Nashville, TN, for Defendants.

## MEMORANDUM

TRAUGER, District Judge.

Pending before the court are two motions. The plaintiff has filed a Motion to Remand this case to the Davidson County Circuit Court, from which the Wyeth defendants removed it. (Docket No. 18) This

motion is opposed by the Wyeth defendants (Docket No. 20), but no response has been filed by defendant James W. Johnson, M.D.[1] The second motion is defendant Dr. Johnson's Motion to Dismiss (Docket No. 13), to which the plaintiff has responded in opposition. (Docket No. 17) Following the initial case management conference on March 31, 2003, all parties filed supplemental briefs. (Docket Nos. 27–29)

### Relevant Factual Background [2]

In 1997, the plaintiff went to defendant James W. Johnson, M.D. to seek help with weight management. Dr. Johnson prescribed for her Pondomin and Phenteramine ("Fen–Phen"), which she took for several months.

In September 1997, Fen–Phen was taken off the market because of concerns about serious health effects. Lawsuits were filed across the country, and the federal cases were consolidated as multi-district litigation in the United States District Court for the Eastern District of Pennsylvania. A settlement was reached in the MDL case, and the plaintiff executed an "opt-out" form in March of 2000 that preserved her individual right to bring suit in connection with any injuries sustained by the ingestion of Fen–Phen (First Amended Complaint, ¶ 1; Docket No. 19 at 12).

The plaintiff filed suit in state court on December 12, 2002 and filed her First Amended Complaint on January 2, 2003. The Wyeth defendants removed the case to this court on January 15, 2003. (Docket No. 1) Codefendant James W. Johnson, M.D. did not join in the Notice of Removal.

1. On March 14, 2003, counsel for defendant Johnson filed a Suggestion of Death as to their client. (Docket No. 24) The parties are in agreement that Dr. Johnson's death does not extinguish the plaintiff's claims, which properly proceed against his estate.

### Motion to Remand

■ Under the removal statute, 28 U.S.C. § 1446, all defendants must join in a notice of removal. *Michigan Affiliated Healthcare v. CC Systems*, 139 F.3d 546, 549 (6th Cir.1998). Where, however, a defendant is fraudulently joined in order to defeat diversity jurisdiction, the court may disregard the citizenship of that defendant, and its failure to consent to the removal, in determining whether diversity jurisdiction exists. *Coyne v. America Tobacco Co.*, 183 F.3d 488, 493 (6th Cir.1999). Here, the Wyeth defendants maintain that defendant James W. Johnson, M.D., who was a citizen of Tennessee (as is the plaintiff), has been fraudulently joined in order to defeat diversity jurisdiction.[3] (Docket No. 1)

■ The removing party bears the burden of establishing federal jurisdiction and, therefore, whether a non-diverse defendant has been fraudulently joined. All disputed questions of fact and "ambiguities in the *controlling* state law" are to be resolved in favor of the non-removing party. Removal statutes are to be strictly construed. *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 948 (6th Cir. 1994) (internal citations omitted)(emphasis in original). If there is a "colorable basis for predicting that a plaintiff may recover against non-diverse defendants," the case "must" be remanded to state court. *Coyne, supra*, at 493; *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir.1999); *Alexander, supra*, at 949.

2. Unless otherwise indicated, the facts are taken from the First · Amended Complaint (Docket No. 1, attach., Ex. 1).

3. At the initial case management conference, counsel for Dr. Johnson stated that he did consent to the removal on behalf of his client.

### 1. Medical Malpractice Claim

■ The plaintiff's First Amended Complaint (Docket No. 1, attach., Ex. I) alleges that she has sustained injury as a result of taking Fen–Phen, which was prescribed by defendant Johnson for weight loss in 1997. She alleges medical malpractice under the Tennessee statute and a violation of the Tennessee Consumer Protection Act ("TCPA") against Dr. Johnson and numerous other causes of action against the Wyeth defendants. The Wyeth defendants (and defendant Johnson in his Motion to Dismiss) allege that the statute of limitations and/or the statute of repose have run on all claims against Dr. Johnson and that, therefore, there cannot be a valid, "colorable" claim against Dr. Johnson that would defeat diversity jurisdiction and mandate a remand of the case to state court.

The statute of limitations for a Tennessee medical malpractice claim provides, in part, as follows:

(1) The statute of limitations in malpractice actions shall be one (1) year as set forth in § 28–3–104.[4]

(2) In the event the alleged injury is not discovered within such one (1) year period, the period of limitations shall be one (1) year from the date of such discovery.

(3) In no event shall any such action be brought more than three (3) years after the date on which the negligent action or omission occurred *except where there is fraudulent concealment on the part of the defendant,* in which case the action shall be commenced within one (1) year after discovery that the cause of action exists.

Tenn.Code. Ann. § 29–26–116(a) (emphasis added).

The plaintiff asserts that she "had no indication or reason to believe that she had actually suffered any adverse effects as a result of her ingestion of those drugs until December 2001, and that diagnosis was not confirmed until early 2002." (Docket No. 19 at 9)[5] Because she brought suit on December 12, 2002, the plaintiff may have met the requirement in Tenn.Code. Ann. § 29–26–116(a)(2) that suit be brought within one year of the date of discovery. However, even if she has, the plaintiff still must comply with the medical malpractice statute of repose, which forecloses any action from being brought more than three years after the date of the negligent act, unless there has been "fraudulent concealment on the part of the defendant." Tenn. Code. Ann. § 29–26–116(a)(3). Since the acts of malpractice on the part of Dr. Johnson had to have occurred in 1997, when he prescribed Fen–Phen for the plaintiff, she would have had to have brought an action against him by sometime in the year 2000 in order to be within the statute of repose. She did not sue until December of 2002, so in order to be relieved of the statute of repose time limitation, she must establish fraudulent concealment on the part of Dr. Johnson.

The plaintiff bears the burden of proof as to fraudulent concealment. *Benton v. Snyder,* 825 S.W.2d 409, 414 (Tenn.1992). The plaintiff must establish:

(1) the healthcare provider took affirmative action to conceal the wrongdoing

---

4. Tenn.Code. Ann. § 28–3–104 prescribes a one-year statute of limitations for all "personal tort actions," running from the accrual of the cause of action.

5. These dates do not appear in the First Amended Complaint. The plaintiff states that she would amend her complaint to allege these dates, if the court finds that necessary. For purposes of these motions, the court will presume that those dates have been alleged.

or remained silent and failed to disclose material facts despite a duty to do so,

(2) the plaintiff could not have discovered the wrong despite exercising reasonable care and diligence,

(3) the healthcare provider knew of the facts giving rise to the cause of action, and

(4) a concealment, which may consist of the defendant withholding material information, making use of some device to mislead the plaintiff, or simply remaining silent in failing to disclose material facts when there was duty to speak.

*Shadrick v. Coker*, 963 S.W.2d 726, 735–36 (1998). The Tennessee Supreme Court has recently emphasized that, to establish fraudulent concealment, it is critical that "the defendant has taken steps to prevent the plaintiff from discovering he was injured." *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 146 (Tenn.2001).[6]

Nowhere in the First Amended Complaint does the plaintiff allege that Dr. Johnson, whom the plaintiff apparently saw only in 1997, did anything affirmative to prevent her from discovering that she had been injured by her ingestion of Fen–Phen. (Docket No. 1, attach., Ex. 1 at ¶¶ 71–72) She does allege that Dr. Johnson fraudulently concealed from her that Fen–Phen posed a serious threat to her health, was only a "temporary fix" and had harmful effects. But she does not allege that Dr. Johnson concealed from her, or prevented her from discovering, that she was injured as a result of taking the drugs.

Even were the plaintiff allowed to amend to make this allegation, it is difficult to conceive of a meritorious allegation that would be grounded in fact. The plaintiff apparently only saw Dr. Johnson in 1997, when he prescribed Fen–Phen. Even if Dr. Johnson knew of the risks of taking the drugs at that time,[7] there are no facts alleged that would support even an inference that he knew at any time that the plaintiff had been injured by the taking of the drugs. In fact, the plaintiff alleges the opposite-she complains that Dr. Johnson did not provide appropriate medical treatment, testing or evaluation of her medical condition before or after she was prescribed the drugs. If there was no way for Dr. Johnson to know that, in fact, the plaintiff had been injured by taking the drugs, there was no way for him to have misled, or concealed that fact from, the plaintiff, and his remaining silent is of no significance.

So the plaintiff has failed to establish an essential element of fraudulent concealment, even under the lenient standard that applies on this motion. She also fails to make out another important element, namely that she could not have discovered the wrong, despite exercising reasonable care and diligence. The plaintiff is correct in asserting that reasonable care and diligence are usually questions of fact that should be left for trial. *Hathaway v. Middle Tennessee Anesthesiology, PC*, 724 S.W.2d 355, 360 (Tenn.App.1986). Where, however, the facts are not in dispute, the question may be decided as a matter of

---

**6.** *Fahrner* is not a medical malpractice case. However, in this passage, the court was specifically discussing the use of fraudulent concealment to toll the statute of repose in medical malpractice cases.

**7.** It must be noted that, throughout the First Amended Complaint, the plaintiff alleges that the drug manufacturer defendants failed to warn physicians of the risks associated with the drugs and misrepresented to physicians the safety and effectiveness of the drugs. (Docket No. 1, attach., Ex. 1 at ¶¶ 48.C. and H., 51.h., 59, 60)

law. *Roe v. Jefferson,* 875 S.W.2d 653, 657 (Tenn.1994).

The plaintiff opted out of the national class settlement of the MDL Fen–Phen litigation in March of 2000. The official court notice of the settlement, which the plaintiff would have to have received in order to have opted out of the settlement, is lengthy and informative. (Docket No. 1, attach, Ex. 42) [8] These documents clearly informed the plaintiff of the possibility that her health has been adversely affected by ingesting Fen–Phen. Further, they inform her that the harm done "may be without symptoms" but may be discovered in a "simple, safe, quick and painless outpatient test." After receiving this information, the plaintiff apparently waited an additional year and nine months to have medical testing that allegedly confirmed that she had been injured by the ingestion of Fen–Phen. These undisputed facts could not lead any finder of fact to conclude that the plaintiff could not have discovered the wrong (her injury) despite exercising reasonable care and diligence. She did not exercise reasonable care and diligence, and, if she had, she might have discovered her injury earlier.

■ The plaintiff maintains that she did not know of, and might not have had, an injury that was detectable before December of 2001 and that her suit brought a year later was timely. Because the plaintiff has failed to carry even her colorable burden with regard to fraudulent concealment, she must bring herself within the three-year statute of repose. That provision requires that a medical malpractice suit be brought no more than three years after the date on which the negligent act or omission occurred. Tenn.Code. Ann. § 29–26–116(a)(3). This statute of repose "is entirely unrelated to the accrual of a cause of action and can, in fact, bar a cause of action before it has accrued." *Cronin v. Howe,* 906 S.W.2d 910, 913 (Tenn.1995) (internal citations omitted); *see also Wyatt v. A–Best Products Co., Inc.,* 924 S.W.2d 98, 102 (Tenn.Ct.App.1995). The negligent acts or omissions alleged in the First Amended Complaint took place in 1997. Because the plaintiff has failed under any standard to establish fraudulent concealment on the part of Dr. Johnson, she must comply with the three-year statute of repose. This she has failed to do. She did not bring suit until December 12, 2002.

Even though she may not have been aware of her injury until December of 2001, the statute of repose bars her action. As harsh a result as this seems to be, the Tennessee Legislature has made the policy decision to impose this absolute three-year limit "to provide certainty as to the time period during which a physician could be subjected to potential liability...to both address the actuarial concerns of the insurance industry and stem increasing medical malpractice insurance rates." *Cronin, supra,* at 913 (internal citations omitted).

■ One more argument made by the plaintiff must be addressed here. The plaintiff, in an effort to overcome the statute of limitations/statute of repose arguments of the defendants, asserts that, even "as of this date, Dr. Johnson has never advised her of any potential adverse effects of those drugs." (Docket No. 19 at 8) This is an effort to bring herself within the rule that, because of the doctor-patient relationship, a physician can be found to have engaged in fraudulent concealment simply by remaining silent. "In such cases, there is a duty to disclose, and that duty may render silence or failure to disclose known facts fraudulent." *Benton, supra,* 825 S.W.2d at 414 (internal citations omitted); *accord Shadrick, supra,* at 735–736.

---

**8.** The court takes judicial notice of these documents pursuant to Rule 201(b)(2), FED R.EVID.; *see also Ieradi v. Mylan Laboratories, Inc.,* 230 F.3d 594, 598 (3d Cir.2000).

This proposition, indeed, is contained within the fourth element of fraudulent concealment that tolls the statute of repose, as discussed earlier. However, this argument by the plaintiff fails for two reasons. First, the plaintiff still must establish the second prong of the fraudulent concealment test, that she "could not have discovered the wrong despite exercising reasonable care and diligence." The court has already discussed herein that the information furnished to the plaintiff in connection with her execution of the opt-out form in March 2000 shows that the plaintiff could have discovered her injury after that date, had she used reasonable care and diligence. Second, the statute of repose requires that, even where the plaintiff has shown fraudulent concealment by the defendant, suit must be brought within one year "after discovery that the cause of action exists." Tenn.Code. Ann. § 29–26–116(a)(3). Again, it cannot be disputed that the plaintiff discovered that she had a cause of action against Dr. Johnson when she was furnished with the court's official notice in connection with her opt-out form in March 2000. Therefore, the statute of repose required that she bring suit by March of 2001. She did not bring suit until December of 2002. So this argument, too, is unavailing in bringing the plaintiff within the medical malpractice statute of repose.

9. Defendants' reliance upon *Roddy v. Volunteer Med. Clinic., Inc.*, 926 S.W.2d 572, 575 (Tenn.Ct.App.1996) is misplaced as the issue of whether the TCPA applies to malpractice claims was not appealed and, therefore, not addressed by the Tennessee Court of Appeals.

10. That is not to say physicians are immune entirely from claims under the TCPA. Rather, they are only immune when the plaintiff's allegations concern the actual provision of medical services. As one state court has explained:

## 2. Tennessee Consumer Protection Act Claim

The plaintiff alleges simply that Dr. Johnson has violated the Tennessee Consumer Protection Act, with no other "fleshing out" of this allegation. (Docket No. 1, attach, Ex. 1, ¶ 71(b)). The defendants argue that this cannot be a colorable claim both because medical malpractice claims do not come within the Tennessee Consumer Protection Act and, even if they did, the statute of limitations/statute of repose applicable to TCPA claims dictate that this claim is untimely.

Whether the Tennessee Consumer Protection Act, Tenn.Code. Ann. § 47–18–101, applies to claims of medical malpractice has not been decided by the Tennessee Supreme Court or Tennessee Court of Appeals.[9] According to its plain language, however, the TCPA applies only to unfair or deceptive practices that affect trade or commerce, as that term is defined in the statute, *e.g.*, the sale or distribution of goods or services. *See* Tenn.Code Ann. § 47–18–103(9).

This language is similar to the language contained in consumer protection statutes of other states. Courts faced with the issue of whether claims of medical malpractice may be brought under a consumer protection statute uniformly have held that they may not because the actual practice of medicine does not affect trade or commerce.[10] *See Simmons v. Stephenson*, 84

We agree that "[i]t would be a dangerous form of elitism, indeed, to dole out exemptions to our [consumer protection] laws merely on the basis of the educational level needed to practice a given profession, or for that matter, the impact which the profession has on society's health and welfare." *Short, supra* at 58, 691 P.2d 163, citing *United States v. Nat'l Society of Professional Engineers*, 389 F.Supp. 1193, 1198 (D.D.C., 1974), vacated and remanded 422 U.S. 1031, 95 S.Ct. 2646, 45 L.Ed.2d 686 (1975) (for reconsideration in light of *Goldfarb, supra*). Also, because the MCPA [Michigan

S.W.3d 926, 927–28 (Ky.App.2002) (collecting cases); *Janusauskas v. Fichman*, 68 Conn.App. 672, 793 A.2d 1109, 1115–16 (2002) (collecting cases). This court agrees with the reasoning of these courts that medical malpractice claims may not be recast as consumer protection act claims.

Even were the plaintiff's claim against Dr. Johnson properly to come within the TCPA, she still must comply with the statutes of limitation and repose applicable to the Act. The statute of limitations provides that actions must be brought "within one (1) year from a person's discovery of the unlawful act or practice...." Tenn.Code. Ann. § 47–18–110. Again, this court has held that the plaintiff discovered her cause of action, or here "the unlawful act of practice," in March of 2000 when she received the official court notice and opted out of the MDL settlement. Therefore, she had to have brought suit against Dr. Johnson by March of 2001. She did not bring suit until December 12, 2002.

### Conclusion

Even by construing all disputed questions of fact and ambiguities in controlling state law in favor of the plaintiff, this court can find no colorable basis for predicting that state law might impose liability on Dr. Johnson. For that reason, the court finds that Dr. Johnson was not properly joined in this action, and his Tennessee citizenship cannot defeat this court's diversity jurisdiction. The Motion to Remand will be denied.

Because Dr. Johnson's Motion to Dismiss and the plaintiff's response to that motion deal with the same issues as the Motion to Remand, this court's rulings on the remand motion are determinative on the issues raised in the Motion to Dismiss. For the reasons expressed herein, Dr. Johnson's Motion to Dismiss will be granted.

An appropriate order will enter.

### ORDER

For the reasons expressed in the accompanying Memorandum, it is hereby **OR-DERED** that the plaintiff's Motion to Remand (Docket No. 18) is **DENIED**, and the Motion to Dismiss filed by defendant James W. Johnson, M.D. (Docket No. 13) is **GRANTED**.

It is so **ORDERED**.

---

Consumer Protection Act] broadly defines "trade or commerce," in part, as the "conduct of a business," and the practice of medicine clearly has a business aspect, a blanket exemption for the learned professions would be improper. However, we are also of the opinion that it would be improper to view the practice of medicine as interchangeable with other commercial endeavors and apply to it concepts that originated in other areas. *Goldfarb, supra.* Therefore, a blanket inclusion in the MCPA for physicians would also be improper. Consequently, we align ourselves with the line of cases set forth in this opinion and hold that only allegations of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of the entrepreneurial, commercial, or business aspect of a physician's practice may be brought under the MCPA. *Nelson v. Ho*, 222 Mich.App. 74, 564 N.W.2d 482, 486 (1997).