Christine WALTER and Sharon King, on Behalf of Themselves and all Other Similarly Situated Individuals, Appellants

v.

MAGEE–WOMENS HOSPITAL OF UPMC HEALTH SYSTEM, University of Pittsburgh Medical Center Health System, Trevor A. Macpherson and George Michalopoulos, Appellees

Superior Court of Pennsylvania.

Argued Dec. 8, 2004.
Filed April 12, 2005.
Reargument Denied June 28, 2005.

Joseph R. Podraza, Philadelphia, for King, appellant.

William A. Pietragallo, Pittsburgh, for appellees.

Before: HUDOCK, MUSMANNO and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 This case arises from a putative class action suit initiated by plaintiffs/appellants Christine Walter and Sharon King, on behalf of themselves and a similar situated class of women, against appellees Magee–Womens Hospital of the UPMC Health System, *et. al*, for medical monitoring, fraud, negligence, unjust enrichment, and violation of the Unfair Trade Practices and Consumer Protection Law (UTPCPL).[1] According to the trial court:

> The action was filed on behalf of a proposed class of women whose Pap smears were processed at Magee–Womens Hospital of the UPMC Health System (Magee) from 1995 through the present. Plaintiffs allege that Magee and the other Defendants intentionally misled and

---

1. 73 P.S. § 201–1, *et. seq.*

deceived Plaintiffs by issuing Pap smear reports bearing physicians' names although the reports had not been reviewed by a physician. Specifically, Plaintiffs assert that some computer-generated reports bore a reproduced signature or attestation of a pathologist when, in fact, the reports had been reviewed by cytotechnologists and not by pathologists. Cytotechnologists are medical professionals trained in the reading and analysis of Pap smears who screen the Pap smears for abnormal cells. Generally, any abnormality is marked for further evaluation by a pathologist. This procedure is in compliance with the Clinical Laboratory Improvement Amendments of 1988, 42 U.S.C. Section 263a *et. seq.*

The harm the Plaintiffs allege they have suffered as a result of Defendants' conduct is that the tests purportedly reviewed by physicians may have been incorrect and cancer and other serious conditions may have gone undetected. Plaintiffs make a claim for medical monitoring which would include rescreening the Pap smears by a qualified third party at Defendants' expense to assure the accuracy of the reports, identify errors and assume proper follow-up care.

Trial Court Opinion, Horgos, J., 4/15/04, at 1–2 (citations omitted).

¶ 2 On January 8, 2004, appellees filed preliminary objections to appellants' complaint, arguing that appellants lacked standing to maintain the cause of action and failed to state a claim upon which relief may be granted. On April 15, 2004, the trial court sustained appellees' preliminary objections, and dismissed appellants' complaint with prejudice. This timely appeal followed.

¶ 3 Appellants raise the following issues for our review:

A. In Dismissing the Complaint, the Trial Court Failed to Apply the Correct Legal Standard.

B. Plaintiffs Have Sufficiently Stated Each of their Claims for Relief.

   1. The Complaint Properly States a Claim for Injury to the Plaintiffs Based on Economic Harm in the Form of Medical Surveillance Costs.

      a. Plaintiffs' Injury Is The Cost of Retesting That They Would Not Otherwise Have Had to Incur But For Defendants' Wrongful Conduct.

      b. The Trial Court Incorrectly Applied the Law by Requiring that Plaintiffs Show Current Physical Injury or Impact.

   2. The Trial Court Erred in Holding That Plaintiffs Had Not Stated A Claim for Medical Monitoring and Negligence Under Pennsylvania Law.

   3. The Trial Court Erred in Holding Plaintiffs Did Not State a Claim for Fraud.

      a. The Trial Court Failed to Consider Plaintiffs' Specific Allegations Regarding Defendants' Material Omissions And Misrepresentations.

      b. The Trial Court Incorrectly Applied the Law in Requiring That Plaintiff's Allege Individual Reliance.

   4. The Trial Court Erred in Dismissing Plaintiffs' Unjust Enrichment Claim.

   5. The Trial Court Erred in Dismissing Plaintiffs' UTPCPL Claim.

C. The Trial Court Erred in Dismissing the Complaint with Prejudice.

Appellants' brief at i-ii.

¶ 4 Our standard of review in determining whether a trial court erred in sustaining preliminary objections is well-settled. "[T]his court must consider as true all of the well-pleaded material facts

set forth in the complaint and all reasonable inferences that may be drawn from those facts." *Knight v. Northwest Savings Bank*, 747 A.2d 384, 386 (Pa.Super.2000) (citation omitted). However, "[w]e need not accept a party's allegations as true to the extent they constitute conclusions of law." *Fay v. Erie Ins. Group*, 723 A.2d 712, 714 (Pa.Super.1999) (citation omitted). "In conducting our appellate review, we observe that preliminary objections, the end result of which would be dismissal of the action, may be properly sustained by the trial court only if the case is free and clear of doubt." *Knight, supra*. "[We] should affirm an order of a trial court...sustaining preliminary objections in the nature of a demurrer where, when all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts are accepted as true, the plaintiff is not entitled to relief." *Small v. Horn*, 554 Pa. 600, 608, 722 A.2d 664, 668 (1998) (citation omitted).

■■■ ¶ 5 Proper appellate review dictates we scrutinize appellants' initial claims in conjunction with the trial court's ruling that appellants lack standing to maintain a cause of action. Trial Court Opinion at 3. It is well-settled that "a party seeking judicial resolution of a controversy in this Commonwealth must, as a prerequisite, establish that he has standing to maintain the action." *Bergdoll v. Kane*, 557 Pa. 72, 83–84, 731 A.2d 1261, 1268 (1999) (citation omitted). "The law of standing provides that one cannot invoke the jurisdiction of the court to enforce private rights or to maintain a civil action for the enforcement of such rights, unless he or she has, in an individual or representative capacity, some real interest in the cause of action, or a legal right, title or interest in the subject matter or controversy." *Treski v. Kemper Nat. Ins. Companies*, 449 Pa.Super. 620, 674 A.2d 1106, 1111 (1996) (citation omitted). To have standing, a party must: "(a) have a substantial interest in the subject-matter of the litigation; (b) the interest must be direct; and (c) the interest must be immediate and not a remote consequence." *Ken R. on Behalf of C.R. v. Arthur Z.*, 546 Pa. 49, 53–54, 682 A.2d 1267, 1270 (1996) (citations omitted).

¶ 6 Applying the above cited standards, the trial court found that appellants were not aggrieved parties and dismissed their complaint. In so ruling, the court reasoned that appellants failed to demonstrate that they or any members of the proposed class have suffered a legally cognizable injury. Trial Court Opinion at 3.

¶ 7 Appellants argue the trial court erred in finding "that the injury for which Plaintiffs sought compensation is the 'fear of being at an increased risk of having a serious medical condition.'" [2] Appellants' brief at 21–22, *quoting* Trial Court Opinion at 4. They contend this conclusion "directly contradicts Plaintiffs' allegations and argument" and is clearly not supported by the record. *Id.* at 21. They maintain their complaint properly states a claim for medical surveillance and retesting costs, and cite numerous examples in the record which enforce this claim. *Id.* at 21–24. Nonetheless, we find it was reasonable for the trial court to infer that appellants' subsequent retesting, although not specifically noted in their complaint, was motivated in part out of a genuine concern or fear that appellees' purported failure to administer reliable Pap smear reports could result in a serious medical condition, if in fact, the condition went undetected. *See Id.* at 15–16, 21. No relief is due.

**2.** For the purposes of discussion, we have altered the order of the issues presented in appellants' brief.

¶ 8 Contrary to appellants' assertions, they have not satisfied the requisite elements of a medical monitoring claim. *See* Appellants' brief at 26–33. *Redland Soccer v. Dept. of The Army*, 548 Pa. 178, 696 A.2d 137 (1997) is the definitive case on medical monitoring claims in Pennsylvania. In *Redland*, our Supreme Court was faced with determining whether Redland Soccer Club was entitled to a medical monitoring trust fund as a result of the United States Department of Army's disposal of hazardous materials in a local park used by the club. *Id.* at 182, 696 A.2d at 139. The Court set forth seven elements that a plaintiff must prove in order to prevail on a common law claim for medical monitoring:

(1) exposure greater than normal background levels;

(2) to a proven hazardous substance;

(3) caused by the defendant's negligence;

(4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease;

(5) a monitoring procedure exists that makes the early detection of the disease possible;

(6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and

(7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Id.* at 195–196, 696 A.2d at 145–146.

¶ 9 Similarly, medical monitoring was recognized as a viable cause of action in *Simmons v. Pacor*, 543 Pa. 664, 674 A.2d 232 (1996). In *Simmons*, the Court disallowed recovery for the increased risk and fear of cancer endured by asymptomatic plaintiffs exposed to asbestos-causing can-

cer, but adopted a limited rule of law permitting plaintiffs with asbestos-related, asymptomatic pleural thickening to recover for medical monitoring. *Id.* at 678–679, 674 A.2d at 239.

¶ 10 Appellants argue that the court narrowly interpreted *Redland* and *Simmons* to preclude recovery based on exposure to a hazardous condition. Appellants' brief at 26–28. They claim they were exposed to dangerous and unsafe medical care in the form of "inherently unreliable" Pap smear reports, and attempt to equate this with exposure to a proven hazardous substance. *Id.* at 30–31. After careful review, we reject such an expansive reading of *Simmons* and *Redland*.

¶ 11 The trial court properly concluded appellants failed to demonstrate they were exposed to a hazardous substance due to appellees' purported negligence. Trial Court Opinion at 8. In so ruling, the court distinguished between appellants' alleged injuries and those suffered by the plaintiffs in *Simmons* and *Redland*. After careful consideration, we agree with the court's assessment and reiterate its well-reasoned conclusions:

Here [unlike *Redland, supra*], there was no exposure or event caused by Defendants' negligence that resulted in a significantly greater risk that Plaintiffs will suffer from a serious medical condition. The risk of these Plaintiffs suffering from cancer is the same as it was before the Plaintiffs underwent the Pap smear procedure and the subsequent review process by the cytotechnologist. There is no allegation that either of the named Plaintiffs has a medical condition that would have been detected if a physician, rather that a cytotechnologist, had reviewed the Pap smears. Even interpreting the seven elements necessary for a medical monitoring claim set forth by the Pennsylvania Supreme

Court in the most expansive way, Plaintiffs have not alleged facts sufficient to state a cause of action.

.     .     .     .     .

The crucial distinction between *Simmons* and the instant case is that the *Simmons* plaintiffs were diagnosed with asymptomatic pleural thickening, a condition which may be objectively determined because it is revealed on an x-ray. It is the existence of the diagnosed condition which gives rise to the need for special monitoring. In order to expand the rationale of *Simmons* and *Redland* to the within matter, Plaintiffs would be required to show a need for special medical monitoring. The medical monitoring claims recognized in both cases were necessitated to promote early diagnosis of disease resulting from uncontroverted exposure to toxic substance and asbestos.

Here, Plaintiffs do not allege that they have suffered any harm whatsoever as a result of a physician's name appearing on a Pap smear report. They do not allege that they have a medical condition as a result of Defendants' conduct as did the plaintiffs in *Simmons*. They do not allege the occurrence of any event that caused a harmful effect upon Plaintiffs' physical well-being as did the plaintiffs in *Redland* who had undeniably been exposed to hazardous substances. Unlike the plaintiffs in *Simmons* and *Redland,* the physical condition of the Plaintiffs was the same after the Pap smear had been performed as it had been before. There are no facts set forth which show a need for medical monitoring for these Plaintiffs that is different from that recommended to the general population. Neither *Redland* nor *Simmons* can be expanded to encompass the medical monitoring claim set forth by Plaintiffs herein.

Trial Court Opinion at 8–10. Accordingly, we find no error on the part of the trial court in concluding that appellants have no viable cause of action for medical monitoring.

¶ 12 For the foregoing reasons, we further reject appellants' claim "the trial court erred in holding plaintiffs did not state a claim for fraud." Appellants' brief at 33. Appellants allege the trial court failed to consider their specific allegations regarding appellees' material omissions and misrepresentations, and improperly required that appellants allege individual reliance. *Id.* at 34–36.

¶ 13 Generally, fraud is defined as "anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." *Debbs v. Chrysler Corp.,* 810 A.2d 137, 155 (Pa.Super.2002) (citations omitted). To prevail on a claim of fraud, a plaintiff must prove:

(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst,* 538 Pa. 193, 207, 647 A.2d 882, 889 (1994) (citations omitted).

¶ 14 In this case, the trial court found that appellants failed to "identify a misrepresentation that was material to the transaction" and did not "plead reliance on a misrepresentation or that they sustained an injury as a result of some misrepresentation by Defendants." Trial Court Opinion at 5. Having carefully reviewed and considered the record, we agree. Al-

though the presence of reproduced signatures on cytotechnologist-reviewed Pap smear reports were slightly misleading, we cannot conclude appellants' reliance on the reports was the proximate cause of their alleged injury—the cost of medical retesting. Accordingly, the trial court's dismissal of appellants' fraud claim was proper.

¶ 15 Appellants next claim "the trial court erred in dismissing plaintiffs' unjust enrichment claim." Appellants' brief at 38. Specifically, appellants allege the Pap smear reports were "inherently unreliable," and the court abused its discretion in failing to conclude appellees "received some benefit that would be unconscionable for it to retain." *Id.* We disagree.

¶ 16 Unjust enrichment is essentially an equitable doctrine, application of which depends on the particular factual circumstances of each individual case. *Schenck v. K.E. David, Ltd.,* 446 Pa.Super. 94, 666 A.2d 327 (1995). To prevail on a claim for unjust enrichment, a plaintiff must prove: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Temple University Hosp., Inc. v. Healthcare Management Alternatives, Inc.,* 832 A.2d 501 (Pa.Super.2003). This Court has summarized our analysis under this doctrine as follows:

> In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched. The most important factor to be considered in applying the doctrine is whether the enrichment of the defendant is *unjust.* Where unjust enrichment is found, the law implies a contract, re-

ferred to as either a *quasi contract* or a contract implied in law, which requires that the defendant pay to plaintiff the value of the benefit conferred.

*Schenck, supra* at 328–329 (citations omitted).

¶ 17 It is well-settled that "the doctrine [of unjust enrichment] does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." *Temple University, supra* at 507. Here, appellants have demonstrated virtually no physical evidence that the Pap smear reports for which they tendered payment were "inherently unreliable" or devalued as a result of the reproduced signatures. As such, appellees' acceptance and retention of appellants' payment was not unjust; appellants received the services for which they bargained.

¶ 18 Appellants also argue the trial court erred in dismissing its UTPCPL claim on the basis it does not apply to procedures of medical services. Appellants' brief at 39, *referring to* Trial Court Opinion at 10–11. Appellants aver their claims arose from appellees' "failure to provide adequate supervision and control policies," and were non-medical in nature. *Id.* at 40–41. Appellants contend the UTPCPL is therefore an available remedy in this case. *Id.* We disagree.

¶ 19 Pennsylvania courts have determined that the UTPCPL does not apply to providers of medical services. *Foflygen v. R. Zemel, M.D. (PC),* 420 Pa.Super.18, 615 A.2d 1345, 1355 (*Pa.Super.*1992); *see also Gatten v. Merzi,* 397 Pa.Super. 148, 579 A.2d 974 (1990).

> According to the Act, unfair methods of competition and deceptive practices in the conduct of any trade or commerce are unlawful. 73 P.S. § 201–3. The phrase "trade or commerce" includes the

sale of services. 73 P.S. § 201–2(3). Among the practices condemned by the Act are various misrepresentations as well as other fraudulent conduct that creates a likelihood of confusion or misunderstanding. 73 P.S. § 201–2(4). However, even though the Act does not exclude services performed by physicians, it is clear that the Act is intended to prohibit unlawful practices relating to trade or commerce and of the type associated with business enterprises. It equally is clear that the legislature did not intend the Act to apply to physicians rendering medical services.

*Gatten, supra* at 976.

¶ 20 After careful consideration, we find appellees' processing, review, and analysis of the Pap smear reports in question more akin to providing medical services than "consumer-oriented, nonmedical activities of a healthcare administrator." Appellants' brief at 41. Accordingly, we find no error on the part of the trial court in rejecting appellants' UTPCPL claim.

¶ 21 Having found appellants do not possess a viable cause of action, we further reject appellants' argument the court erred "by completely ignoring [their] factual allegations and legal arguments in dismissing [the] complaint with prejudice." Appellants' brief at 1; *see also* pp. 18–20, 42–43.

¶ 22 Generally, in matters involving preliminary objections, the trial court's standard of review is identical to the one which constrains this Court. *Frey v. Smith*, 454 Pa.Super. 242, 685 A.2d 169 (1996). Here, the trial court sufficiently weighed each of appellants' arguments and concluded that they failed to state a claim upon which relief could be granted. Where a party's complaint fails to allege an essential element of a claim or demonstrates no legally cognizable injury, a rul-

ing sustaining preliminary objections is entirely appropriate. *See Eden Roc Country Club v. Mullhauser*, 416 Pa. 61, 204 A.2d 465 (1964); *Fay, supra.*

¶ 23 Given this fundamental deficiency, the court was justified in dismissing appellants' complaint with prejudice. "A court is not required to allow amendment of a pleading if a party will be unable to state a claim on which relief could be granted." *Werner v. Zazyczny*, 545 Pa. 570, 584, 681 A.2d 1331, 1338 (1996) (citation omitted).

¶ 24 For the foregoing reasons, we affirm the court's April 15, 2004 Order sustaining appellees' preliminary objections and dismissing appellants' complaint with prejudice.

¶ 25 Order affirmed.