IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 6, 2019 Session

**ROY FRANKS ET AL. v. TIFFANY SYKES ET AL.**

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Madison County**
**No. C-16-171        Kyle Atkins, Judge**

_____

**No. W2018-00654-SC-R11-CV**

_____

A person who is injured because of an unfair or deceptive act or practice that affects the conduct of any trade or commerce has a cause of action under the Tennessee Consumer Protection Act of 1977 ("the Act"), Tennessee Code Annotated sections 47-18-101 to -132 (2013 & Supp. 2019). We granted review to determine whether the Act applies to the business aspects of a health care provider's practice. The plaintiffs were injured in car accidents and received hospital medical services. The hospitals did not bill the plaintiffs' health insurance companies but filed hospital liens against the plaintiffs' claims for damages arising from the accidents. The hospital liens were for the full amount of the hospital bills with no reduction for the plaintiffs' health insurance benefits. The plaintiffs sued the hospitals, asserting the filing of undiscounted hospital liens was an unlawful practice under the Act. The trial court dismissed the case, ruling that the plaintiffs had failed to state a cause of action. The Court of Appeals affirmed, holding that the Act did not apply to a claim in which the underlying transactions involved medical treatment. We hold that the Act applies to health care providers when they are acting in their business capacities. The plaintiffs, who were consumers of medical services, may state a claim under the Act against the hospitals for conduct arising out of the hospitals' business practices. We reverse and remand this case to the trial court for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals**
**Reversed; Judgment of the Trial Court Reversed; Remanded to the Trial Court**

SHARON G. LEE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Charles L. Holliday, Jackson, Tennessee, for the appellants, Roy Franks and Cindy Edwards.

Michael L. Mansfield, Jackson, Tennessee, for the appellees, Professional Account Services, Inc., Dyersburg Hospital Corporation, and Martin Hospital Corporation, individually and d/b/a Tennova Healthcare.

Ashley Holliday, Jackson, Tennessee, David Kozlowski, Columbia, Tennessee, and David Tarpley, Nashville, Tennessee, for the amicus curiae, Tennessee Alliance for Legal Services.

**OPINION**

**I.**

In 2015, Roy Franks was treated at Tennova-Dyersburg, which previously did business as Dyersburg Regional Medical Center,[1] for injuries he received in a collision with a vehicle driven by Tiffany Sykes. Professional Account Services, Inc., acting for Dyersburg Hospital Corporation, filed a hospital lien against Franks' cause of action against Sykes for the full amount of the $3,812.92 hospital bill, and did not file a claim with Franks' health insurance company. In 2014, Cindy Edwards was injured in an automobile accident caused by the negligence of another driver. Edwards received medical treatment at Tennova-Martin, which previously did business as Volunteer Community Hospital.[2] Professional Account Services, Inc., acting for Martin Hospital Corporation, filed a hospital lien against Edwards' cause of action for the full amount of the $408 hospital bill, and did not file a claim with Edwards' health insurance company.

After Franks sued Sykes for his personal injuries, he amended his complaint to add Edwards as a plaintiff[3] and as defendants, Professional Account Services, Inc., Dyersburg Hospital Corporation, and Martin Hospital Corporation, individually and d/b/a Tennova

---

[1] Tennova-Dyersburg is referenced in the record several different ways due to name changes at various times. The facility's parent company at the time was Dyersburg Hospital Corporation.

[2] Tennova-Martin is also referenced in the record several different ways due to name changes at various times. The facility's parent company at the time was Martin Hospital Corporation.

[3] Franks also added Tony Cooke as a plaintiff and Jackson, Tennessee Hospital Company, LLC as a defendant. Cooke, who had been injured in a collision, received treatment at Tennova-Jackson, which previously did business as Regional Hospital of Jackson. Tennova-Jackson did not bill Cooke's health insurance company and filed a hospital lien for the full amount of his hospital bill. The trial court dismissed Cooke's claim, and he did not appeal.

Healthcare ("the Hospitals"). Franks' amended complaint alleged that the Hospitals violated section 104(b)(12)[4] of the Act by filing hospital liens under the Hospital Lien Act,[5] Tennessee Code Annotated sections 29-22-101 to -107 (2012 & Supp. 2019), for the full, undiscounted amount of the Hospitals' charges rather than billing Franks' and Edwards' health insurance companies and accepting the negotiated discounted charges.

The trial court granted the Hospitals' motion for judgment on the pleadings and dismissed Franks' case for failure to state a claim under the Act.[6] The trial court dismissed Edwards' claim for lack of venue.

The Court of Appeals affirmed the dismissal of Franks' case, noting that the filing of a hospital lien constitutes a debt collection activity, and the Act does not apply unless the underlying transaction is a consumer transaction as defined by the Act. *Franks v. Sykes*, No. W2018-00654-COA-R3-CV, 2018 WL 6253820, at *4–5 (Tenn. Ct. App. Nov. 28, 2018) (citing *West v. Shelby Cnty. Healthcare Corp.*, 459 S.W.3d 33, 37, 40 (Tenn. 2014); *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 609 (W.D. Tenn. 2011)). The Court of Appeals determined that "the underlying transaction—the treatment of Mr. Frank's [sic] injuries from a motor vehicle accident—epitomizes a doctor's practice of their [sic] profession" and therefore did not fit within the Act's definition of a "consumer transaction." *Id.* at *5. The Court of Appeals reversed the trial court's dismissal of Edwards' claim based on lack of venue and directed the trial court on remand to dismiss Edwards' case for failure to state a claim under the Act. *Id.* at *6. We granted Franks and Edwards' application for permission to appeal under Rule 11 of the Tennessee Rules of Appellate Procedure.

---

[4] It is a deceptive act or practice under the Act to "[r]epresent[] that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law." Tenn. Code Ann. § 47-18-104(b)(12) (2013 & Supp. 2019).

[5] The Hospital Lien Act provides that any Tennessee hospital "shall have a lien for all reasonable and necessary charges for hospital care . . . upon any and all causes of action . . . accruing to the person to whom such care . . . was furnished . . . on account of illness or injuries giving rise to such causes of action . . . and which necessitated such hospital care . . . ." Tenn. Code Ann. § 29-22-101(a) (2012). The hospital can collect up to one-third of the damages the plaintiff obtains in a lawsuit by judgment or settlement. *Id.* § 29-22-101(b). The hospital must file the notice of its lien in the circuit court of the county where the hospital is located and of the county where the patient lives. *Id.* § 29-22-102(a). To contest the lien or the reasonableness of the charges, a patient can move to quash or reduce the lien. *Id.* § 29-22-102(d).

[6] Franks had previously settled and voluntarily dismissed his personal injury claim against Sykes.

- 3 -

## II.

We review a trial court's dismissal of a claim on a motion for judgment on the pleadings under Tennessee Rule of Civil Procedure 12.03 using the same standard that governs our review of a dismissal under Rule 12.02(6) for failure to state a claim. *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citing *Waller v. Bryan*, 16 S.W.3d 770, 773 (Tenn. Ct. App. 1999)). The standard of review requires us to review the trial court's ruling de novo with no presumption of correctness and "construe the complaint liberally in favor of" the plaintiffs, taking all allegations of fact as true. *Id.* (citing *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)); *Waller*, 16 S.W.3d at 773. We review a trial court's interpretation of a statute de novo with no presumption of correctness. *In re Estate of Davis*, 308 S.W.3d 832, 836–37 (Tenn. 2010) (citing *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009)).

At issue is whether the Act applies to the business aspects of a health care provider's practice. Courts in jurisdictions throughout the country have held that their states' consumer protection laws apply to health care providers when the providers are acting in their business capacities.

The United States Supreme Court cleared the way for the business – professional distinction in *Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975). In *Goldfarb*, the Supreme Court held that the Virginia State Bar was not exempt from a price-fixing claim under the Sherman Act.[7] *Id.* at 791–92. Rejecting the argument that lawyers did not engage in "trade or commerce," the Supreme Court recognized that learned professionals, such as lawyers, engage in business roles as well as professional roles. *Id.* at 787–88. In their business roles, lawyers are "subject to the same antitrust and consumer protection laws as any other business." *Brookins v. Mote*, 292 P.3d 347, 358 (Mont. 2012) (quoting *Goldfarb*, 421 U.S. at 787–88). Before *Goldfarb*, learned professionals were historically exempt from federal consumer protection laws because they were not considered to be engaged in trade or commerce. *Brookins*, 292 P.3d at 358 (citations omitted). The reasoning behind the exemption was that, unlike those practicing a trade or running a business, "competition is inconsistent with the practice of a profession because enhancing profit is not the goal of professional activities; the goal is to provide services necessary to the community." *Id.* (citations omitted) (internal quotation marks omitted).

The *Goldfarb* business distinction has been extended to other learned professionals, including health care providers. *Brookins*, 292 P.3d at 359 (citations omitted). *See also Dorn v. McTigue*, 157 F. Supp. 2d 37, 46–48 (D.D.C. 2001)

---

[7] The federal Sherman Anti-Trust Act, 15 U.S.C. §§ 1-7, makes it a felony to engage "in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1 (2018).

(explaining that the consumer protection statute applies when a plaintiff establishes by clear and convincing evidence the threshold requirements of a merchant/consumer relationship and a nexus between the plaintiff's claim and the entrepreneurial aspects of the medical practice); *Haynes v. Yale-New Haven Hosp.*, 699 A.2d 964, 972–73 (Conn. 1997) (finding that the consumer protection statute applied to the entrepreneurial and commercial aspects of medical and legal practices); *Henderson v. Gandy*, 623 S.E.2d 465, 468 (Ga. 2005) (holding that the consumer protection statute applied to physicians in the entrepreneurial, commercial, or business aspects of medical practice); *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 730 (Ky. Ct. App. 2007) (stating that the consumer protection act applied to business aspects of medical practice—e.g., advertising a particular treatment then failing to advise of risks or alternatives, financial arrangements intended to increase profits although possibly detrimental to patients, or advertising services at one price then charging a higher price); *Darviris v. Petros*, 812 N.E.2d 1188, 1193–94 (Mass. 2004) (finding that the consumer protection statute may apply to entrepreneurial aspects of medical practice, including an informed consent claim, if the doctor's sole motive for selecting the treatment was financial gain); *Nelson v. Ho*, 564 N.W.2d 482, 486 (Mich. Ct. App. 1997) (stating that the consumer protection statute applies to the entrepreneurial, commercial, or business aspects of medical practice, reasoning that since "the practice of medicine clearly has a business aspect, a blanket exemption for the learned professions would be improper"); *Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 666–68 (N.Y. 1999) (declaring that there is no blanket exemption for medical providers and that when physicians "choose to reach out to the consuming public at large in order to promote business . . . they subject themselves to the standards of an honest marketplace secured by" the consumer protection statute); *Investigators, Inc. v. Harvey*, 633 P.2d 6, 8–9 (Or. Ct. App. 1981) (holding that "a dentist who regularly offers his services to the public is engaged in a 'business, vocation[,] or occupation'" and is therefore subject to the consumer protection statute, even though dentistry is a profession regulated by the state); *Walter v. Magee-Womens Hosp. of UPMC Health Sys.*, 876 A.2d 400, 407–08 (Pa. Super. Ct. 2005), *aff'd per curiam*, 906 A.2d 1194 (Pa. 2006) (holding that the processing of lab reports was more like providing medical treatment than consumer-oriented commercial or business activities of health care providers that the consumer protection statute would cover); *Quimby v. Fine*, 724 P.2d 403, 406 (Wash. Ct. App. 1986) (stating that the consumer protection statute applies to entrepreneurial aspects of medical practice, including an informed consent claim if the medical provider obtained the consent to promote a service to increase profits or patient volume without adequately advising of risks or alternatives).

The Tennessee Court of Appeals and federal courts have recognized the distinction between the business and professional roles of medical providers under the Act. In *Constant v. Wyeth*, 352 F. Supp. 2d 847 (M.D. Tenn. 2003), the United States District Court for the Middle District of Tennessee considered whether the Act applied to

medical malpractice claims.[8] In holding the Act inapplicable, the court noted that the Act states that it only applies to unfair or deceptive acts or practices involving "the sale or distribution of goods or services." *Id.* at 853 (citing Tenn. Code Ann. § 47-18-103(9)). The *Constant* court cited decisions from other states holding that their consumer protection statutes, which have language similar to the Act, do not apply to medical malpractice claims "because the actual practice of medicine does not affect trade or commerce." *Id.* at 853–54 (citing *Simmons v. Stephenson*, 84 S.W.3d 926, 927–28 (Ky. Ct. App. 2002); *Janusauskas v. Fichman*, 793 A.2d 1109, 1115–16 (Conn. App. Ct. 2002)). The *Constant* court agreed that although "medical malpractice claims may not be recast as consumer protection act claims," physicians are not subject to the Act only when they are providing medical treatment. *Id.* at 853 & n.10, 854.

The United States District Court for the Western District of Tennessee relied on *Constant* in ruling that a doctor's conduct of inducing a patient to buy an unnecessary medical device implicated the doctor's business practices rather than his practice of medicine. *Roberson v. Medtronic, Inc.*, 494 F. Supp. 2d 864, 869 (W.D. Tenn. 2007). The *Roberson* court noted that the *Constant* court made clear that a physician does not have immunity from claims under the Act and that "'allegations of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of the entrepreneurial, commercial, or business aspect of a physician's practice'" may be actionable under the Act. *Id.* (quoting *Constant*, 352 F. Supp. 2d at 854 n.10). For that reason, the *Roberson* court did not dismiss the plaintiff's claim under the Act. *Id.*

The Tennessee Court of Appeals also relied, in part, on *Constant* in deciding *Proctor v. Chattanooga Orthopaedic Group, P.C.*, 270 S.W.3d 56 (Tenn. Ct. App. 2008).[9] The plaintiff in *Proctor* alleged that the defendant medical group had billed his insurance company for a more expensive surgical procedure than the surgeon had performed. *Id.* at 58. The trial court dismissed the plaintiff's case, finding that he had failed to state a claim for which relief could be granted under the Act. *Id.* The Court of Appeals reversed, noting that "'[i]t would be a dangerous form of elitism, indeed, to dole out exemptions to our [consumer protection] laws merely on the basis of the educational level needed to practice a given profession, or for that matter, the impact which the profession has on society's health and welfare.'" *Id.* at 59 (alteration in original) (quoting

---

[8] The court decided *Constant* under the Tennessee Medical Malpractice Act, before the enactment of the Tennessee Civil Justice Act of 2011, which replaced "medical malpractice" with "health care liability." *See Ellithorpe v. Weismark*, 479 S.W.3d 818, 826 (Tenn. 2015).

[9] No Rule 11 application for review was filed in *Proctor*.

*Constant*, 352 F. Supp. 2d at 853–54 n.10). The *Proctor* court also observed that, along with directing that the Act be "liberally construed," the General Assembly made clear its intention that the Act "shall be interpreted and construed consistently with" the Federal Trade Commission Act and that the Act applies to attorneys. *Id.* at 60–61 (citations omitted). By analogy, the *Proctor* court held that the defendants were "not exempt because they [were] learned professionals from claims relating to their business practices brought under the [Act]." *Id.* at 61.

Similarly, and relying on *Proctor*, the Court of Appeals recently held that the Act applied to claims against a company operating hormone replacement therapy centers for falsely advertising the treatments they administered. *State ex rel. Slatery v. HRC Med. Ctrs., Inc.*, No. M2017-02559-COA-R3-CV, 2019 WL 3992735, at *6–7 (Tenn. Ct. App. Aug. 23, 2019), *perm. app. denied* (Tenn. Apr. 16, 2020). The *HRC* court emphasized the distinction made in *Proctor* between a claim that HRC had deviated from the applicable standard of care in administering treatments, which would fall under the Tennessee Health Care Liability Act, and the claim that HRC had falsely advertised its treatments to patients in violation of the Act. *Id.* The *HRC* court noted that the allegations of false advertising were "focused on the deceptiveness of HRC's business practices," which was the harm that the Act was enacted to remedy. *Id.* at *7.

We agree with the reasoning of these cases. Thus, in determining whether a consumer has stated a cause of action under the Act against a health care provider, we must determine whether the health care provider was acting in a business or in a professional capacity. Under this analysis, when a plaintiff alleges an injury caused by a health care provider's business practices—including, but not limited to, deceptive practices in advertising, billing, or collections—the plaintiff may state a claim under the Act. When a plaintiff asserts a claim that an injury is caused by a health care provider's professional conduct, such as a deviation from the applicable standard of medical care, then the Act does not apply because that claim would be based on medical negligence under the Tennessee Health Care Liability Act. As the *Proctor* court noted, "[t]hese two types of claims are wholly separate and distinct claims governed by separate statutory schemes," 270 S.W.3d at 60, and a health care provider cannot be held liable under both the Act and the Tennessee Health Care Liability Act for the same conduct. *See id.* at 60 (plaintiffs' claims were covered under the Act because they had not alleged that the surgeon deviated from the standard of care, which would have been a claim for medical malpractice, but had alleged improper business practices—misrepresentation to keep their business and improperly charging for a more expensive procedure); *Roberson*, 494 F. Supp. 2d at 869 (holding that inducing a patient to buy a medical device the patient did not need related to the defendant's business practices and not to the medical services that he provided); *see also Henderson*, 623 S.E.2d at 468 (quoting *Haynes*, 699 A.2d at 973) (stating that the "touchstone" of a claim against a health care provider is an allegation

based on the entrepreneurial or business aspects of the medical practice "aside from medical competence . . . or aside from medical malpractice based on the adequacy of staffing, training, equipment or support personnel"); *Barnett*, 233 S.W.3d at 730–31 (stating that consumer protection statute did not apply to claims for treatment falling below the standard of care because these claims did not relate to the business aspects of medical practice such as advertising and billing for services); *Darviris*, 812 N.E.2d at 1193–94 (acknowledging that not "all conduct of medical care providers [was] beyond the reach of [the consumer protection] statute," but holding that for the plaintiff to state a claim under that statute, she had to show that the physician's decision to perform a different procedure than planned was solely for financial gain); *Nelson*, 564 N.W.2d at 486–87 (concluding that the defendant's alleged failure to disclose to the patient the kind of sutures that would be used in a procedure or the risks involved with the sutures and misrepresenting to the patient after the procedure that there was no problem with the sutures was a claim based on the provision of medical services and not a claim subject to the consumer protection statute).

The Hospitals rely on *Pursell v. First American National Bank*, 937 S.W.2d 838 (Tenn. 1996) and its progeny. The Hospitals, however, fail to recognize that the *Pursell* Court expressly limited the opinion's application to the particular facts and circumstances of the case. ("This holding is confined to the facts and circumstances of this case, and we do not, by this Opinion, generally exempt banking activities from the Tennessee Consumer Protection Act." *Id.* at 842 (citation omitted)). Thus, *Pursell* cannot be interpreted to say that no collection activities are covered by the Act. Collection activities can be covered, provided they "affect[] the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a). This is a fact-intensive inquiry.

This Court has applied the Act to certain debt collection activities. In *Discover Bank v. Morgan*, 363 S.W.3d 479, 495–96 (Tenn. 2012), we held that a credit card company was liable under the Act for the loss of credit sustained by the widow of a credit card holder because of the company's collection activities. Similarly, in *Searle v. Harrah's Entertainment, Inc.*, No. M2009-02045-COA-R3-CV, 2010 WL 3928632, at *11 (Tenn. Ct. App. Oct. 6, 2010), the Tennessee Court of Appeals held that the Act applied to the defendant's efforts to collect on a bad check because the underlying transaction involved "trade, commerce, and a consumer transaction," and the collection efforts were a continuation of the consumer transaction.

Also, the Act "explicitly provides that it is to be interpreted and construed in accordance with interpretations of" the Federal Trade Commission Act. *Tucker v. Sierra Builders*, 180 S.W.3d 109, 114–15 (Tenn. Ct. App. 2005). With this directive in mind, it follows that the Act should apply to collection activities because courts have applied the Federal Trade Commission Act to claims involving collection activities. *See, e.g., FTC v.*

*LoanPointe, LLC*, 525 Fed. App'x 696, 700–01 (10th Cir. 2013); *FTC v. Check Investors, Inc.*, 502 F.3d 159, 174–75 (3rd Cir. 2007), *abrogated on other grounds by Henson v. Santander Consumer USA, Inc.*, ___ U.S. ___, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017); *Trans World Accounts, Inc. v. FTC*, 594 F.2d 212, 214 (9th Cir. 1979); *Spiegel, Inc. v. FTC*, 540 F.2d 287, 290 (7th Cir. 1976); *Slough v. FTC*, 396 F.2d 870, 871–72 (5th Cir. 1968); *In re Carlsbad Physician Ass'n*, No. 031 0002, 2003 WL 21043066, at *2 (F.T.C. May 2, 2003); *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 529 (Alaska 1980).

In sum, a health care provider, when acting in its business capacity rather than in its professional capacity, is subject to claims under the Act. As noted in *Goldfarb*, the exchange of professional services "for money is 'commerce' in the most common usage of that word." 421 U.S. at 787–88. Franks and Edwards do not allege that the Hospitals failed to provide proper medical care. Instead, Franks' and Edwards' consumer claims are based on the Hospitals' efforts in their business capacities to collect payment for the distribution and sale of medical goods and services. The parties do not dispute that the filing of a hospital lien is a collection activity, but only whether the filing is covered by the Act. *See West*, 459 S.W.3d at 37–38.

The trial court did not decide, and therefore we do not address, whether the section of the Act relied on by Franks and Edwards encompasses conduct under the Hospital Lien Act and whether the liens filed by the Hospitals were false or deceptive under the Act.

## III.

We are required to take all of the factual allegations in the amended complaint as true and construe the amended complaint liberally in favor of Franks and Edwards. After doing so, we find that Franks and Edwards have stated a cause of action under the Act by alleging that they were injured by unfair or deceptive acts of the Hospitals that affect the conduct of trade or commerce. We reverse the judgments of the trial court and the Court of Appeals, and we remand this case to the trial court for further proceedings. We tax the costs of this appeal to Professional Account Services, Inc., Dyersburg Hospital Corporation, and Martin Hospital Corporation, individually and d/b/a Tennova Healthcare, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE