# Hoopes, Appellant, *v.* Bradshaw.

*Constitutional law—Judicial and legislative powers—Attorneys at law —Act of May 8, 1909, P. L. 475.*

1. The Act of May 8, 1909, P. L. 475, which provides that admission "to practice as an attorney at law in the Supreme Court of this commonwealth shall of itself, without more, operate as an admission of such attorney as an attorney at law in every other court of this commonwealth, without any other or further action by such other courts or by such attorney," is not unconstitutional as a legislative inter-

ference with judicial power in violation of art. V, sec. 1, of the constitution.

2. All that the act of 1909 does is to declare what effect is to be given to a purely judicial act of the Supreme Court in directing the admission of an attorney at law to practice before it.

Argued Oct. 12, 1910.   Appeal, No. 201, Oct. T., 1910, by plaintiff, from judgment of C. P. Beaver Co., June T., 1910, No. 192, for defendant on case tried by the court without a jury in suit of Charles Hoopes v. Charles W. Bradshaw, Prothonotary of Beaver County.   Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.   Reversed.

Petition for mandamus.   Before HOLT, P. J.

The case was tried by the court without a jury under the Act of April 22, 1874, P. L. 109.

The case turned upon the constitutionality of the Act of May 8, 1909, P. L. 475.

*Error assigned* was in entering judgment for defendant and refusing mandamus.

*William B. Cuthbertson,* with him *Agnew Hice, Robert Ritchie, Frank E. Reader* and *George A. Baldwin,* for appellant.

*Frank H. Laird* for appellee.—The admission of an attorney is a judicial act: Com. ex rel. v. Judges of Common Pleas of Cumberland County, 1 S. & R. 187; Com. ex rel. v. Judges of the District Court for the City and County of Phila., 5 W. & S. 272; Greenough v. Greenough, 11 Pa. 489; Ervine's App., 16 Pa. 256; Com. v. Aul, 18 Pa. Dist. Rep. 1040.

OPINION BY MR. JUSTICE BROWN, May 1, 1911:

The appellant, a member of the bar of the Allegheny county courts and of this court, in good standing, presented his præcipe to the prothonotary of the court of

common pleas of the court below for his appearance for the defendant in a certain proceeding therein pending. With his præcipe he exhibited a certificate of his admission on October 5, 1905, as a practitioner before this court. The prothonotary having refused to accept the præcipe and to recognize the appellant as a member of the bar of Beaver county, he applied to the court below for a mandamus directing that officer to do so. He based his application for the writ upon the Act of May 8, 1909, P. L. 475, which provides that admission "to practice as an attorney at law in the Supreme Court of this commonwealth shall of itself, without more, operate as an admission of such attorney as an attorney at law in every other court of this commonwealth, without any other or further action by such other courts or by such attorney." The writ was denied because in the judgment of the court below the act of 1909 was an unconstitutional interference by the legislature with a purely judicial function.

Nothing is clearer in the consitution than the separation of the legislative and judicial branches of our state government. Neither possesses the powers of the other, and any power inherent in the one cannot be exercised by the other. Judicial powers and functions are to be exercised by the judiciary alone, and a century ago in Commonwealth ex rel. Brackenridge v. Judges of Common Pleas, 1 S. & R. 187, it was held that the admission of an attorney to practice before a court is a judicial act. This has never been doubted or questioned since, and, if the act of 1909 is an encroachment upon the judiciary, it must be regarded as a vain attempt by the legislature to exercise a power which it does not possess. The learned court below, being of opinion from what was said in Splane's Petition, 123 Pa. 527, that the act was such an encroachment, pronounced it null and void.

What this court had before it in Splane's Petition was the Act of May 19, 1887, P. L. 131, which provided that any attorney at law duly admitted to practice in any court of common pleas and in the Supreme Court of this common-

wealth should be admitted to practice in any other court of the commonwealth upon motion simply, by exhibiting to the court a certificate of admission to the Supreme Court and filing a certificate of the presiding judge of the county or district from which he came, setting forth that he was of reputable professional standing and of unobjectionable character. The question of the constitutionality of the act was not raised, and the mandamus for which Splane applied was refused because he had not complied with its provisions. The question before the court, as stated in the opinion denying the writ, was: "Whether the petitioner, after having twice presented himself before the duly constituted board of examiners, and having been twice rejected by them as not properly qualified to practice law, can, by procuring his admission in another county, aided by the act of assembly, compel his admission in the court where he has been rejected for incompetency." Upon two occasions Splane had been before the board of examiners of the county, and in each instance had been rejected as not being properly qualified to practice as an attorney. Subsequently he was admitted to practice in the court of common pleas of Cambria county, but it did not appear that he had ever resided or practiced in that county, or that he was even a citizen of the state. It was further discovered that the order admitting him to practice in this court had been improvidently made. The reason for denying him the writ is thus given in the opinion of the court: "He has not complied with it (act of 1887), for the reason that it requires a certificate of the 'presiding judge' of the county from whence he came, setting forth that he is of reputable professional standing, etc. This plainly means the certificate of the judge of the county where he has lived and practiced law, who is presumed to know his qualifications in that regard, and who can truly and intelligently certify to his good character. A lawyer may chance to be a member of the bar of half the counties in the state; he may be admitted in a county other than the one in which he resides, for the mere purpose of trying

a single case. It is the merest evasion of the act to present the certificate of the judge of a district where the petitioner has not last lived and practiced, and an admission to the bar obtained by such means might well be vacated by the judge who should inadvertently grant it, as a fraud upon the court." After refusing the writ, for the reason stated, Chief Justice PAXSON, in digressing, said in characteristically vigorous language, that the act of 1887 was an encroachment upon the judiciary department of the government; but as that question had not been raised and counsel had not been heard upon it, what was said of the unconstitutionality of the act is to be regarded as obiter dictum, and we now pass upon the question of the constitutionality of the act of 1909 as a new one.

Is the act of 1909 an attempt by the legislature to usurp judicial power, or does it in any manner interfere with the exercise of judicial functions? In its first words it recognizes the admission of an attorney to practice in the highest court of the commonwealth as a judicial act, and does not attempt to interfere with that court's power in the performance of that act. The question then resolves itself into this, May the legislature say what effect is to be given to an order or decree of this court in the matter of admitting attorneys to practice before it?

By sec. 3, art. V, of the constitution, the jurisdiction of this court extends over the entire commonwealth, and, by appeal or certiorari the proceedings of every district court of record, as well as those of the Superior Court, can be here reviewed. By the act of May 22, 1722, its powers are those possessed by "the court of King's Bench"—the supreme court of common law in England,—"common pleas and exchequer, at Westminster, or any of them." It was not, therefore, an unwarranted assumption on the part of the legislature that qualifications which fit an attorney at law to practice before the supreme court of the state ought to fit him to do so in every other court within it; but what may have induced the legislature to act is not important. The sole question is, Did it have the power

to act as it did?  Having first distinctly recognized the performance of a judicial act by this court, what follows is but a legislative enactment as to the force and effect to be given to it by the lower courts.  For nearly seventy-five years similar legislation has been recognized, without a suggestion from anyone of its being an encroachment upon the powers and functions of the judiciary.  The adoption of rules of court regulating practice therein is certainly as much a judicial function, with which the legislature may not interfere as is the admission of attorneys, and yet, from the time of the passage of the act of June 16, 1836, requiring all the courts of common pleas in the commonwealth, sitting as courts of equity, to be bound by the rules of practice as adopted by this court, no one has ever heard that such legislation was an encroachment upon the judiciary.  And it was not, for it merely declared what effect shall be given to the rules or orders of this court, which it has the inherent power to make independently of the legislative branch of the government.  This is practically the situation before us.  All that the act of 1909 does is to declare what effect is to be given to a purely judicial act of this court in directing the admission of an attorney at law to practice before it.  The act neither encroaches upon nor interferes with a power exercisable by the judiciary alone, but declares that when such power has been exercised by the highest judiciary of the state, in passing upon the qualifications of an applicant to practice as an attorney before it, its act in admitting him to its bar is to be duly recognized by all the other courts over whose proceedings it has constant supervision.  But while this is so, there are certain functions of the lower courts with which the act of 1909 does not interfere.  The honest disposition and good moral character possessed by one at the time of his admission to the bar of this court, may be subsequently lost, and, if so, the certificate of his admission here will not be a voucher for his integrity to any court before which he may seek to practice under the act of 1909.  The loss of his integrity may not have

been inquired into here, but, if lost, he has no more right under the act of 1909 to seek membership in a county bar than he has to ask that his name shall continue upon the roll of practicing attorneys before this court; and any court may, therefore, refuse to permit him to practice before it upon being duly informed that he no longer possesses "an honest disposition," declared by the act of April 14, 1834, to be one of the two requisites for admission to the bar of every court of record. Another function of the court below, not interfered with by the act, and which it may be well to notice, is its power to adopt rules relating to the service of notices or papers upon nonresident practitioners. When the act of 1909 is invoked by one who does not intend to reside or establish an office in the county to whose courts he would be admitted, he is not to expect practitioners residing in the county, or having established offices within it, to be subjected to annoyance and inconvenience in the service of rules or notices upon him, and the adoption of a rule as to this continues to be within the power of the court. For the reasons stated we cannot regard the act of 1909 as an unconstitutional interference with the exercise of a judicial function.

The judgment is, therefore, reversed and the record remitted with direction that the mandamus issue as prayed for.