376 So.2d 1067 (1979)
Bruce G. REED and Floyd J. Reed
v.
ALLISON & PERRONE.
No. 10172.
Court of Appeal of Louisiana, Fourth Circuit.
October 10, 1979.
*1068 Reed, Reed & D'Antonio, Bruce G. Reed, J. D., New Orleans, for plaintiffs-appellants.
Allison & Perrone, Paula A. Perrone, New Orleans, for defendants-appellees.
Before LEMMON, SCHOTT and GARRISON, JJ.
GARRISON, Judge.
Bruce G. Reed and Floyd J. Reed, attorneys at law, sued William T. Allison and Paula A. Perrone, lawyers who operated a legal clinic and advertised its services in local newspapers.[1] The Reeds charged that Allison and Perrone's advertisements were misleading, confusing, and deceptive, and they sought an injunction to restrain the defendants from making
"any newspaper advertisements, written solicitations, or any written or oral communication of any kind stating, suggesting, or inferring [sic] that the Legal Clinic concept is new or that the said defendants pioneered the idea in Louisiana, or containing any other deceptive or misleading matter."
The Reeds also prayed for an injunction ordering Allison and Perrone
"to obtain, at their own expense, a newspaper advertisement of similar size and with comparable circulation or of identical size and with the same newspaper, informing the community that there were misrepresentations in the newspaper advertisement. . ., informing specifically what the misrepresentations were in general, and specifically informing the public that your petitioners have been continuously conducting a Legal Clinic in this community for many years."
Allison and Perrone countered by filing an exception of lack of jurisdiction, which was overruled by the district court. After a hearing on the merits of the injunction request, the district court denied the injunction, reasoning that the matter addressed itself not to injunctive relief, but rather to regulation and disciplinary action by the state bar association. The Reeds have appealed.
We affirm the decision of the district court, although for different reasons. The bar association's regulatory and disciplinary actions are not the sole machinery by which attorneys' advertising may be regulated. The U. S. Supreme Court, in Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), held that while truthful advertising of routine legal services may not be prevented by the State, advertising that is false, deceptive, or misleading is subject to restraint. The district judge interpreted "State restraint" to include the Louisiana State Bar Association's Code of Professional Responsibility, which must be approved by the state Supreme Court before it is adopted by the bar association. He concluded that the disciplinary rules of the bar association were the sole regulatory device to be placed upon attorneys' advertising, and thus dismissed the Reeds' suit, since the disciplinary rules may be enforced only by the bar association and the Supreme Court.
We agree that attorneys' advertising is subject to regulation by the state bar association, but we also find that their advertising may be subject to other state legislation. Advertising of legal services is clearly a "trade" or "commerce" as defined by R.S. 51:1402(10).[2] It is, therefore, subject *1069 to the provisions of the Louisiana Unfair Trade Practices and Consumer Protection Law, R.S. 51:1401-1418 (Acts 1972, No. 759, § 1).
R.S. 51:1405A declares unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." The Act provides a vehicle through which the attorney general may enjoin prohibited practices (R.S. 51:1407), and gives broad power to the courts to issue whatever additional relief is necessary to compensate an aggrieved person (R.S. 51:1408).[3] In addition, § 1409 of the Act authorizes private actions by individuals to recover actual damages suffered as a result of any method, act or practice unlawful under § 1405.
Injunctive relief is authorized by C.C.P. Art. 3601, which provides, in pertinent part, "An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law. . . ." Irreparable injury justifying an injunction is that which cannot be adequately compensated in damages or for which damages cannot be compensated in money. Caffery v. Powell, 320 So.2d 223 (La.App. 3rd Cir. 1975). It includes injury which cannot reasonably be redressed in a court of law. Critney v. Goodyear Tire & Rubber Co., 353 So.2d 341 (La.App. 1st Cir. 1977). Irreparable injury is the sine qua non for an applicant to obtain injunctive relief absent some specific statute. Termplan Arabi, Inc. v. Carollo, 299 So.2d 831 (La.App. 4th Cir. 1974).
R.S. 51:1407 grants the attorney general the right to injunctive relief on showing that the defendant is using, has used, or is about to use any method, act or practice declared unlawful by R.S. 51:1405. This statute frees the attorney general from the burden of proving irreparable injury or that he has no adequate remedy at law.
The statute has no effect on the general right of a private plaintiff to seek injunctive relief. If he does so, however, he is not relieved of the burden of pleading and proof of which the attorney general is relieved by statute.
In the present case, the Reeds have alleged that the advertisement directly affects their livelihood and their professional reputation in the community, and that it has done them irreparable injury. They have failed, however, to prove either that they have no adequate remedy in damages or that the advertisement caused them any harm whatsoever. At the hearing on the injunction, defendant Allison's testimony indicated that at least one statement in the advertisement was misleading.[4] Nonetheless, because the Reeds are private plaintiffs they bore the burden of proving that the statementor any other part of the advertisementinjured them irreparably. They failed to carry this burden.
Accordingly, the judgment of the district court is affirmed. Each party is to bear its own costs.
AFFIRMED.
LEMMON, J., concurs and assigns reason.
*1070
 APPENDIX
No. 10172, Reed v. Allison
& Perrone. APPENDIX.
 December 21, 1977 FIGARO Page 39
 The advertisement read as follows:
 "IF YOU THINK LAWYERS ARE TOO EXPENSIVE,
 YOU SHOULD KNOW ABOUT US.
 "We are the Legal Clinic of Allison and Perrone.
 If you're rich, you can afford any lawyer.
 If you're poor, you can get free legal
 aid. But what if you're not quite rich and
 not quite poor?
 "You should know about The Legal Clinic of
 Allison and Perrone.
 "The legal clinic concept is a relatively new
 idea that we pioneered in Louisiana. Legal clinics
 provide lawyers at moderate fees for people
 in the middle.
 "The Legal Clinic of Allison & Perrone offers
 low cost counseling. Your initial consultation
 with one of our lawyers is $15. The Legal Clinic
 can tell you if you have a legal problem or
 not, and just what the possibilities and costs
 of solution are. We have now resolved the problems
 of roughly 60% of our clients at the initial
 consultation with no additional fee. If
 The Legal Clinic does any further work for you,
 that $15 fee is applied to your total charge.
 "At The Legal Clinic of Allison and Perrone a
 simple will is $25; an uncontested divorce,
 separation, or step-parent adoption is $175.
 Court costs and filing fees are extra. Other
 services are available for comparatively low
 fees. For information call us. We will be
 happy to give you our complete schedule of fees.
 "YOU HAVE A RIGHT TO KNOW."
LEMMON, Judge, concurring.
Violations of R.S. 51:1401 et seq. are illegal acts which presumably result in damages to members of the class for whose benefit the statute was enacted. Actual damage to one member of a large class, however, is as a practical matter generally impossible to prove, and Section 1409's authority for an individual (not in a representative capacity) to recover actual damages probably does not provide an effective means of deterring such practices. Moreover, when the agency created to control methods and practices unfair to consumers and competitors does not have the resources and manpower to effectuate the purposes of the act, private actions by individuals who have a real and actual interest in deterring *1071 unfair methods of competition and unfair trade practices are necessary to make the legislative purpose effective.
The right to enjoin an illegal act in violation of a statute is generally accorded to the parties who have a real and actual interest in having the statute enforced. Accordingly, courts may enjoin unfair methods of competition, consisting of false and deceptive advertising by lawyers, when the competitor who brought the action presents proof of advertising which is so false and deceptive that competitors (and the public) more probably than not are damaged thereby. While the statement in this case that 60% of the clients have their problems resolved at the initial consultation is perhaps the type of overstatement that bar associations can more properly regulate by insisting on accuracy in advertising, the overall advertisement arguably does not compel a conclusion that competitors sustain such substantial damage as to justify injunctive relief. I therefore concur in the result in this particular case, especially since the objectionable statement was removed from the advertisement before trial of the injunction.
NOTES
[1] See Appendix.
[2] "As used in this Chapter, the following words and phrases shall have the meanings hereinafter ascribed to them: * * *

"(10) `Trade' or `commerce' means the advertising, offering for sale, sale or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state." (Emphasis added.) R.S. 51:1402(10).
[3] The State may also impose criminal penalties for false or misleading advertising, under R.S. 51:411.
[4] The advertisement stated, "We have resolved the problems of roughly 60% of our clients at the initial consultation with no additional fee." Allison testified,

"What we meant to say [was] sixty percent of the people who came in to us have not been, have not gone farther with the problems, they either received a satisfactory answer or this was a problem that's continuing, nothing could be done or what we might do to resolve the problem. We didn't require any additional fee from them."