937 A.2d 1082

Janic Iannece BEYERS

v.

Donald RICHMOND, Forceno & Arangio, P.C.,
Robert Arangio and Raymond P. Forceno.

Appeal of: Forceno & Arangio, P.C., Robert
Arangio and Raymond P. Forceno.

Supreme Court of Pennsylvania.

Argued April 16, 2007.

Decided Dec. 28, 2007.

Jeffrey B. Albert, Toki Rehder, J.W. Christie, McKissock & Hoffman, P.C., Philadelphia, for Forceno & Arangio, P.C., Robert Arangio and Raymond P. Forceno, appellants.

Amy Joann Coco, Weinheimer Schadel & Haber, P.C., Pittsburgh, Kathryn Lease Simpson, Mette, Evans & Woodside, Harrisburg, for Pa. Bar Ass'n, amicus appellant.

Edwin P. Smith, Smith, Edwin P. & Associates, P.C., for Janic Iannece Beyers, appellee.

BEFORE: CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## OPINION

Justice FITZGERALD.

We determine whether the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. §§ 201-1–209-6, applies to an attorney's conduct in collecting and distributing settlement proceeds. The Superior Court held that the UTPCPL provides a cause of action against attorneys arising out of the disbursement of settlement funds. We hold the UTPCPL does not apply to attorney misconduct, and reverse the decision of the Superior Court.

## FACTS

This case arises from the admitted conversion of funds by Donald Richmond, an associate of appellants' Pennsylvania law firm, Forceno & Arangio, P.C. (the Firm), for which the Firm was held vicariously liable, and for the preparation of a settlement distribution sheet by the Firm which included deductions for unsubstantiated costs.

Appellee Janice Iannece Beyers and her companion, James Piccirilli, were injured in an automobile accident. They re-

tained the services of Donald Richmond and the Firm to represent them in their personal injury claim. Appellee agreed to settle the case for $468,401.67. According to a fee agreement, appellee was to receive 42.5% of the settlement, or $205,495.72. The Firm received the settlement funds and Richmond converted $185,000 of the settlement. Richmond deposited $95,000 of the funds into court in Delaware County in connection with his personal divorce action. The remaining funds, held in escrow by appellants, were also deposited into court. Appellants prepared a distribution schedule, which provided: $68,481.91 for recovery of attorneys' fees, $1,576.65 for unidentified costs, $6,480.59 for a "loan repayment" to an accountant, and $18,001.61 for medical bills. These amounts were deducted from appellee's settlement. The court ordered appellants to pay appellee $110,904.96, based upon the distribution schedule.[1]

Appellee contended that the deductions reflected on the distribution schedule were improper. On January 29, 2002, appellee filed a complaint against appellants alleging negligent supervision, negligence, conflict of interest and breach of fiduciary duty, violation of consumer protection laws (UTPCPL), assumpsit in the form of forfeiture of attorneys' fees, and fraudulent misrepresentation.[2]

A bench trial was held on the sole issue of damages. On August 25, 2003, the court found in favor of appellee as to all claims, except violation of the UTPCPL. The claims pursuant to the UTPCPL were held under advisement. The court rendered a preliminary verdict, in the amount of $110,198.24, which represented the recovery of attorneys' fees in the amount of $68,481.91 and non-existent costs totaling

1. There appears to be a computation error in this calculation, but the error is of no consequence in the disposition of this case.

2. On May 22, 2002, a default judgment was entered against Richmond for failure to file an answer to the complaint. On February 4, 2003, appellee's motion for summary judgment was granted only as to the vicarious liability of appellants for the malfeasance of Richmond. Appellants do not dispute the fact that Richmond converted funds due appellee and that they are vicariously liable for damages resulting from Richmond's actions.

$26,058.85, plus simple interest at the statutory rate of 6% per annum during the 2¾ years of non-payment in the amount of $15,607.48.[3]

On December 9, 2003, the Honorable Mark Bernstein found in favor of appellee on the UTPCPL claim, awarding her treble damages in the amount of $78,171.00.[4] Appellee filed a motion for clarification of the December 9, 2003 order, contending that the entire verdict entered on August 25, 2003, $110,198.24, should be trebled. Appellee also requested 40% for attorneys' fees on the trebled amount. On February 6, 2004, the court assessed damages in the amount of $467,637.20 on the UTPCPL claim.[5] Post trial motions were filed, denied, and judgment was entered.

The Superior Court affirmed the judgment of the trial court, and adopted its reasoning, holding that appellants' actions did not arise from the practice of law, and therefore appellants could not use their profession as a shield from the application of the UTPCPL. Further, the Superior Court held appellee established the essential elements of fraud, and that appellants' malfeasance pertaining to the collection and management of the settlement funds, as well as the breach of their fiduciary responsibility to appellee, placed their actions within the scope of the UTPCPL.

## DISCUSSION

This case presents a question of law, thus this Court's standard of review is plenary. *Norton v. Glenn,* 580 Pa. 212, 860 A.2d 48, 52 (2004). Although we find the egregious conduct of appellants in this case to be reprehensible, we decline to hold that Pennsylvania's UTPCPL applies to an attorney's conduct in collecting and distributing settlement

3. The total of these sums should be $110,148.24. This error is not relevant to the disposition of the case.

4. This figure represented the trebling of the non-existent costs, $26,058.85.

5. This figure represented the trebling of the entire judgment of $110,198.24, plus 40% of the trebled amount for attorney's fees, and $4,804.55 in court costs.

proceeds. Application of the UTPCPL under these circumstances would encroach upon this Court's exclusive power to regulate the practice of law in this Commonwealth. *In re Larsen,* 571 Pa. 457, 812 A.2d 640, 653 (Sp.Trib.2002).

### a. *Applicability of Consumer Protection Laws*

Most states have enacted a consumer protection statute.[6] The majority of jurisdictions that have addressed this issue have held that the regulation of attorneys does not fall within the ambit of consumer protection laws.[7] A minority of juris-

---

**6.** Ala.Code 8–19–5; Alaska Stat. § 45.50.471; Ariz.Rev.Stat. Ann. § 44–1522; Ark.Code Ann. § 4–88–107; Cal Bus. & Prof.Code 17200, 17500; Cal. Civ.Code § 1770; Colo.Rev.Stat. Ann. § 6–1–105; Conn. Gen.Stat. Ann. 42–110b; 6 Del. C. § 2511 *et seq.;* D.C.Code Ann. § 28–3901; Fla. Stat. Ann. § 501.204; Ga.Code Ann. § 10–1–393; Haw.Rev.Stat. Ann. § 481–3; Idaho Code § 48–603; 815 Ill. Comp. Stat. Ann. 505/1 *et seq.;* Ind.Code Ann. 24–5–0.5–3; Iowa Code Ann. 714.16; Kan. Stat. Ann. § 50–626; Ky.Rev.Stat. Ann. § 367.170; La.Rev.Stat. Ann. 51:1409; 5 Me.Rev.Stat. Ann. § 207; Md. Commercial Law Code Ann. § 13–301; Mass. Gen. Laws Ann. 93A § 11; Mich. Comp. Laws Ann. 445.903; Minn.Stat. Ann. § 325D.44; Miss.Code Ann. § 75–24–5; Mo. Ann. Stat. 407.020; Mont.Code Ann. 30–14–103; Neb.Rev.Stat. § 59–1602; Nev. Rev.Stat. Ann. 598.0979; N.H.Rev.Stat. Ann. § 358–A:2; N.J. Stat. Ann. 56:8–1 *et. seq.;* N.M. Stat. Ann. § 57–12–2; N.Y. Gen. Bus. Law § 349; N.C. Gen.Stat. § 75–1.1; N.D. Cent.Code 51–15–02; Ohio Rev. Code Ann. § 1345.02; 15 Okla. Stat. Ann. § 751; Or.Rev.Stat. § 646.608; R.I. Gen. Laws § 6–13.1–2; S.C.Code Ann. § 39–5–20; S.D. Codified Laws § 37–24–6; Tenn.Code Ann. § 47–18–104; Tex. Bus. & Com.Code Ann. § 17.46; Utah Code Ann. 13–5–2.5; 9 Vt. Stat. Ann. § 2453; Va.Code Ann. § 59.1–200; Wash. Stat. 19.86.020; W. Va.Code § 46A–6–104; Wis. Stat. Ann. 100.20; Wyo. Stat. § 40–12–105.

**7.** *See, e.g., Cripe v. Leiter,* 184 Ill.2d 185, 234 Ill.Dec. 488, 703 N.E.2d 100, 104 (1998) ("legislature did not intend to include the furnishing of legal services to clients within the [Consumer Fraud] Act"); *Jackson v. Adcock,* 2004 WL 1900484, at *5, 2004 U.S.Dist.Lexis 16888, at *19 (E.D.La.2004) ("LUPTA does not regulate the practice of law."); *Tetrault v. Mahoney, Hawkes & Goldings,* 425 Mass. 456, 681 N.E.2d 1189, 1195 (1997) (attorneys were not engaged in "trade or commerce" subject to consumer protection act); *Averill v. Cox,* 145 N.H. 328, 761 A.2d 1083, 1089–90 (2000); *Macedo v. Dello Russo,* 178 N.J. 340, 840 A.2d 238, 242 (2004) (professionals are beyond the reach of the Consumer Fraud Act); *Reid v. Ayers,* 138 N.C.App. 261, 531 S.E.2d 231, 235–36 (2000) (recognizing "learned profession" exemption to unfair trade practices act); *Burke v. Gammarino,* 108 Ohio App.3d 138, 670 N.E.2d 295, 298 (1995) (Ohio Consumer Sales Practices Act "does not apply to transactions between attorneys and their clients"); *Kessler v. Loftus,* 994 F.Supp. 240, 242–43 (D.Vt.1997) (claim based upon law-

dictions has carved out an exception for entrepreneurial aspects of the practice of law, such as advertising and debt collection, while recognizing that claims which allege negligence or legal malpractice are exempt from the consumer protection laws.[8] Courts which strictly adhere to the separation of powers doctrine hold that consumer protection laws do not apply to attorneys.[9] Other jurisdictions hold that the consumer protection statutes do not apply to the practice of law based upon the existence of regulatory boards,[10] or explicit

yer's professional judgment not actionable under consumer fraud act); *Quinn v. Connelly,* 63 Wash.App. 733, 821 P.2d 1256, 1261 (1992) (element of consumer protection act requiring that the act occur in trade or commerce "cannot be satisfied by claims directed at the competence or strategy of an attorney"); *Ikuno v. Yip,* 912 F.2d 306, 312–13 (9th Cir.1990) (dismissal of CPA claim against attorney was proper since claim was based on competence and strategy of attorney).

8. *See, e.g., Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin,* 247 Conn. 48, 717 A.2d 724, 740 (1998) (entrepreneurial aspects of the practice of law are covered by the CUPTA, claims of professional negligence do not fall under the CUPTA); *Reed v. Allison & Perrone,* 376 So.2d 1067, 1068 (La.Ct.App.1979) (advertising of legal services is trade or commerce subject to the provisions of the UTPCPL); *Guenard v. Burke,* 387 Mass. 802, 443 N.E.2d 892, 896 (1982) (an attorney's use of contingency fee agreements rendered unlawful under state statute may constitute an "unfair or deceptive act or practice"); *Kessler v. Loftus,* 994 F.Supp. 240, 243 (D.Vt.1997) (commercial, entrepreneurial aspects of the practice of law include advertising, billing and collection practices, fee arrangements, and methods of obtaining, retaining and dismissing clients); *Eriks v. Denver,* 118 Wash.2d 451, 824 P.2d 1207, 1214 (1992) (legal services do not generally fall within the definition of "trade or commerce", except as those services relate to the "entrepreneurial aspects" of the practice of law).

9. *See, e.g., People v. Coria,* 937 P.2d 386, 390 (Colo.1997) (Supreme Court has "inherent, plenary, and exclusive authority to 'regulate, govern, and supervise the practice of law in Colorado and to protect the public'"); *In re Infotechnology, Inc. Shareholder Litigation,* 582 A.2d 215, 220 (Del.1990) (Supreme Court "has sole and exclusive responsibility over all matters affecting governance of the Bar"); *Averill v. Cox,* 145 N.H. 328, 761 A.2d 1083, 1088 (2000) (court's "comprehensive" regulation of the practice of law "protects consumers from the same fraud and unfair practices" as the state consumer protection act); *Vort v. Hollander,* 257 N.J.Super. 56, 607 A.2d 1339, 1342 (App.Div.1992) ("practice of law in the State of New Jersey is regulated, 'in the first instance, if not exclusively,' by the New Jersey Supreme Court").

10. *See, e.g., State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 528 (Alaska 1980) (unfair acts and practices exempted from the purview of the UTPA "only where the business is both regulated elsewhere *and* the

exemptions for attorneys within statutes.[11] However, some jurisdictions have indicated implicitly that in certain circumstances a claim could be brought against an attorney under the consumer protection act,[12] and still other jurisdictions have not decided the issue.[13]

### b. *Pennsylvania's UTPCPL*

The pertinent section of the Pennsylvania statute provides:

(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($ 100), whichever is greater. The court may, in its

unfair acts and practices are therein prohibited") (emphasis in original); *Gadson v. Newman*, 807 F.Supp. 1412, 1417 (C.D.Ill.1992) ("medical and legal professions are afforded immunity from the Consumer Fraud Act primarily, because, unlike other commercial services, medical and legal bodies are regulated by governmental bodies"); *Lyne v. Arthur Andersen & Co.*, 772 F.Supp. 1064, 1068 (N.D.Ill.1991) (legal profession not subject to consumer fraud act because of governmental regulation of the legal profession); *Rousseau v. Eshleman*, 128 N.H. 564, 519 A.2d 243, 245 (1986) (professional conduct committee of the Supreme Court is "a regulatory board acting under statutory (and constitutional) authority of this State").

11. *See, e.g.*, D.C.Code Ann. § 28–3903(c)(2)(C); Md. Commercial Law Code Ann. § 13–104; N.C. Gen.Stat. § 75–1.1(b); Ohio Rev.Code Ann. § 1345.01(A); Tex. Bus. & Com.Code Ann. § 17.49(c).

12. Louisiana and Massachusetts hold attorneys liable under the consumer protection statutes based upon the implicit inclusion of professional services in the meaning of trade or commerce. La.Rev.Stat. Ann. § 51–1401–1418; *Reed v. Allison & Perrone*, 376 So.2d 1067, 1068–69 (La.App.1979) (attorneys' advertising is subject to regulation by the state bar association, and subject to the provisions of the UTPCPL); Mass. Gen. Laws Ann. 93A, §§ 1–11; *Brown v. Gerstein*, 17 Mass.App.Ct. 558, 460 N.E.2d 1043, 1052 (1984) (practice of law constitutes trade or commerce under the consumer protection law).

13. *See, e.g.*, *LJS Co. v. Marks*, 480 F.Supp. 241, 242 (S.D.Fla.1979) (court did not decide the issue); *Matthews v. Berryman*, 196 Mont. 49, 637 P.2d 822, 826 (1981) (under facts of this case, UTPCPL did not apply); *Roach v. Mead*, 301 Or. 383, 722 P.2d 1229, 1234–35 (1986) (under certain circumstances the UTPA could apply to attorneys).

discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($ 100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201–9.2(a).

The applicability of this statute to the attorneys' conduct in this case presents an issue of first impression in Pennsylvania. Although this Court has not addressed the issue of the applicability of the UTPCPL to attorney conduct, the Superior Court of Pennsylvania has held that the UTPCPL does not apply to treatment provided by another category of professionals: physicians. *Foflygen v. R. Zemel, M.D.*, 420 Pa.Super. 18, 615 A.2d 1345 (1992), *appeal denied*, 535 Pa. 619, 629 A.2d 1380 (1993); *Gatten v. Merzi*, 397 Pa.Super. 148, 579 A.2d 974 (1990), *appeal denied*, 528 Pa. 611, 596 A.2d 157 (1991). In *Gatten*, the court held "[t]here is no indication that the [UTPCPL] was intended to create a cause of action for every statement made by a physician regarding a patient's condition, the likelihood for success of a given procedure, or the recommended course of treatment." *Gatten*, 579 A.2d at 976. The holding in *Gatten* was embraced by the court in *Foflygen*. *Foflygen*, 615 A.2d at 1354.

In *Walter v. Magee–Womens Hosp.*, 876 A.2d 400, 407 (Pa.Super.2005), *aff'd per curiam*, 588 Pa. 739, 906 A.2d 1194 (2006), the Superior Court held that the UTPCPL was not intended to apply to providers of medical services. *Walter* involved a proposed class action lawsuit filed for a group of women whose pap smear reports were processed bearing physicians' names, although the reports were not reviewed by physicians. The proposed class was not certified and the appellate court determined, *inter alia*, that the processing of pap smear results did not trigger a claim under the UTPCPL. The Superior Court in *Walter* opined that "Pennsylvania courts have determined that the UTPCPL does not apply to providers of medical services." *Walter*, 876 A.2d at 407.

According to the Act, unfair methods of competition and deceptive practices in the conduct of any trade or commerce are unlawful. 73 P.S. § 201–3. The phrase "trade or commerce" includes the sale of services. 73 P.S. § 201–2(3). Among the practices condemned by the Act are various misrepresentations as well as other fraudulent conduct that creates a likelihood of confusion or misunderstanding. 73 P.S. § 201–2(4). However, even though the Act does not exclude services performed by physicians, it is clear that the Act is intended to prohibit unlawful practices relating to trade or commerce and of the type associated with business enterprises. It equally is clear that the legislature did not intend the Act to apply to physicians rendering medical services.

*Walter*, 876 A.2d at 407–8, (quoting *Gatten, supra* at 976).

We are also persuaded by the reasoning in an unpublished, non-precedential decision from the federal District Court for the Eastern District of Pennsylvania in *Jackson v. Ferrera*, 2002 WL 32348328, 2002 U.S. Dist. Lexis 12731 (E.D.Pa.2002), where the District court addressed the applicability of the UTPCPL to attorney misconduct. In *Jackson*, an attorney was sued for violation of the UTPCPL. The court, noting that nearly all courts having considered the issue had rejected the notion that it applied to attorney conduct in the context of the practice of law, held that "[o]n this basis alone, Plaintiffs have failed to state a claim." *Id* at \*2, 2002 U.S. Dist. Lexis 12731 at \*4.

But in *Daniels v. Baritz*, 2003 WL 21027238, 2003 U.S. Dist. Lexis 7707 (E.D.Pa.2003), the District Court distinguished *Jackson*. In *Daniels*, the defendant attorneys were debt collectors within the meaning of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, and the court held "[a]ttorneys who regularly engage in debt collection practices, *apart form their legal representation*, are covered under the FDCPA." *Daniels*, at \*4, 2003 U.S. Dist. Lexis 7707 at \*11–12 (emphasis supplied). The UTPCPL was interpreted to apply to debt collection as an act in trade or commerce. *Id.* at \*5, 2003 U.S. Dist. Lexis 7707 at \*14. Similarly, the Common-

wealth Court addressed applicability of the UTPCPL in the context of physicians' fraudulent billing practices. In *Commonwealth v. Cole*, 709 A.2d 994, 997 (Pa.Commw.1998), *appeal denied*, 558 Pa. 611, 736 A.2d 606 (1999), the court held that a physician's attempt to collect outstanding bills from patients after the statute of limitations had run was violative of the UTPCPL. Dr. Cole characterized his activities as debt collection and he was engaged in debt collection practices in violation of 37 Pa.Code §§ 303.3(3) and (18) (Debt Collection Regulations). These cases are distinguishable from the decisions involving professional misconduct by physicians

c. *The Pennsylvania Supreme Court's Authority* [14]

"The Supreme Court in this Commonwealth is empowered by the Pennsylvania Constitution to govern the conduct of attorneys practicing law within the Commonwealth." *Lloyd v. Fishinger*, 529 Pa. 513, 605 A.2d 1193, 1196 (1992). This exclusive power is granted to this Court by Article V, Section 10(c) of the Pennsylvania Constitution which provides in pertinent part that "[t]he Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts.... All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions." Any legislative enactment encroaching upon this Court's exclusive power to regulate attorney conduct would be unconstitutional. *Lloyd*, 605 A.2d at 1196. The legislature is precluded from "exercising powers entrusted to the judiciary." *Commonwealth v. Stern*, 549 Pa. 505, 701 A.2d 568, 571 (1997) (citation omitted).[15]

**14.** In his concurring opinion, Chief Justice Cappy indicates the issue in this case may be dispositively resolved on statutory grounds. We respectfully disagree, and hold the matter may be finally determined only through an analysis of the constitutional grounds for this Court's exclusive authority.

**15.** *See, e.g., Shaulis v. Pennsylvania State Ethics Commn.*, 574 Pa. 680, 833 A.2d 123, 132 (2003) (65 Pa.C.S. § 1103(g) of the Public Official and Employee Ethics Act [barring attorney from practicing before former government employer for one year after he leaves employment] is unconstitutional to the extent that it regulates the conduct of former government employees who are also attorneys); *Gmerek v. State Ethics Comm'n.*, 751 A.2d 1241, 1260 (Pa.Commw.2000), *aff'd*, 569 Pa. 579,

■ Moreover, this Court's exclusive authority in this area is founded on the separation of powers of our Commonwealth's government. The separation of powers doctrine can be found in the constitutions of 1790, 1838, and 1873. *Dauphin County Grand Jury Investigation Proceedings*, 332 Pa. 342, 2 A.2d 804, 807 (1938). When the Pennsylvania Constitution was amended in 1968, the section which the court relied on for the separation of powers doctrine remained unchanged.[16] Moreover, Article V § 10(a) [17] and section 10(c) [18] were added,

807 A.2d 812 (2002) (Lobbying Disclosure Act, 65 Pa.C.S. § 1303–1311 invalid and unconstitutional insofar as it applied to the conduct of lawyers engaged in lobbying activities, since lobbying activities were "the practice of law"); *Commonwealth v. Stern*, 549 Pa. 505, 701 A.2d 568, 571–73 (1997) (18 Pa.C.S. § 4117(b)(1) which criminalized conduct of an attorney for compensating non-lawyer for client referrals held unconstitutional as violative of separation of powers doctrine; Supreme Court promulgated Pa.R.P.C. 7.2(c) which governs this conduct); *Snyder v. Unemployment Comp. Bd. of Review*, 509 Pa. 438, 502 A.2d 1232, 1233–34 (1985) (Section 410 of the Ethics Act (65 P.S. § 410) permits court employees to participate in partisan political activity is unconstitutional as applied to any person affected by this Courts directive forbidding partisan political activity as violative of Pa. Const. Art. V, § 10(c)); *Wajert v. State Ethics Comm'n.*, 491 Pa. 255, 420 A.2d 439, 442 (1980) (65 P.S. § 403(e), providing that no former official or public employee could represent a person on any matter before the governmental body with which the employee or official was previously associated, is an unconstitutional encroachment upon the exclusive power of this Court to regulate the practice of law); *In re 42 Pa.C.S. § 1703*, 482 Pa. 522, 394 A.2d 444, 446–47(1978) (42 Pa.C.S. § 1703, Open Meeting Law, as applied to the judiciary, is a violation of separation of powers doctrine); *Pennsylvania Co. for Insurances on Lives and Granting Annuities v. Scott*, 346 Pa. 13, 29 A.2d 328, 329–30 (1942) (pursuant to separation of powers doctrine, the legislature cannot interfere with a judgment or decree of the judicial branch); *In re Splane*, 123 Pa. 527, 16 A. 481, 483 (1889) (law attempting to regulate admission to the bar was unconstitutional because admission to the bar is a judicial, not a ministerial act, solidifying this Court's position as the governmental branch with control over the legal profession).

16. Article V § 1 was modified as follows:
The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal and traffic courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace. All courts and justices of the peace and their jurisdiction shall be in this unified judicial system.

17. Article V § 10(a) provides that "[t]he Supreme Court shall exercise general supervisory and administrative authority over all the courts and

giving this Court the exclusive constitutional authority to regulate the practice of law. In *Commonwealth v. Sutley,* 474 Pa. 256, 378 A.2d 780, 783 (1977), this Court opined that "[a]ny encroachment upon the judicial power by the legislature is offensive to the fundamental scheme of our government." [19]

Furthermore, Article V § 10(c) of the Constitution has been held to include the power of "the continuous monitoring of the practice of law." *Cantor v. Supreme Court of Pennsylvania,* 353 F.Supp. 1307, 1316 n. 21 (E.D.Pa.1973), *aff'd,* 487 F.2d 1394 (3rd Cir.1973). "The Supreme Court has declared the meaning of Article V, Section 10(c) in its Rule of Disciplinary Enforcement No. 103." *Pennsylvania Public Utility Commission Bar Ass'n. v. Thornburgh,* 62 Pa.Cmwlth. 88, 434 A.2d 1327, 1331 n. 6 (1981), *aff'd,* 498 Pa. 589, 450 A.2d 613

justices of the peace, including authority to temporarily assign judges and justices of the peace from one court or district to another as it deems appropriate." Section 10(a) solidified this Courts pronouncements in *In re Splane,* 123 Pa. 527, 16 A. 481, 483 (1889) (holding this Court has control over the legal profession) and *Hoopes v. Bradshaw,* 231 Pa. 485, 80 A. 1098, 1100 (1911) (discussion of separation of powers between the judiciary and legislative branches *vis a vis* regulation of attorney conduct).

18. Article V § 10(c) provides:

The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

19. The doctrine of separation of powers "has been inherent in the structure of this Commonwealth's government since its inception. 'This separation appeared in Pennsylvania as early as 1776 in the Plan or form of government for the Commonwealth or State of Pennsylvania ... [and has] continued in our constitutions of 1790, of 1838, and of 1873.' " *Sutley,* 378 A.2d at 782 (citation omitted).

(1982). "The Supreme Court declares that it has inherent and exclusive power to supervise the conduct of attorneys who are its officers (which power is reasserted in Section 10(c) of Article V of the Constitution of Pennsylvania) and in furtherance thereof promulgates these rules which *shall supersede all other court rules and statutes* pertaining to disciplinary enforcement heretofore promulgated." *Id.* at 1331 (citing Pa. R.D.E. 103) (emphasis added). The authority granted to the judiciary in Article V § 10(c) is exclusive, not concurrent. *Lloyd,* 605 A.2d at 1195.

 "Pursuant to our constitutional authority, this Court adopted the Rules of Professional Conduct and the Rules of Disciplinary Enforcement, which govern the conduct and discipline of attorneys." *Commonwealth v. Stern,* 549 Pa. 505, 701 A.2d 568, 571 (1997). In *Stern,* this Court held a statute that criminalized the conduct of an attorney for compensating a non-lawyer for client referrals was unconstitutional as violative of the separation of powers doctrine. *Stern,* 701 A.2d at 573. Pursuant to Pa.R.D.E. 103, "[t]he Supreme Court declares that it has inherent and exclusive power to supervise the conduct of attorneys who are its officers" and this Court is vested with "the inherent and exclusive power to govern the conduct of those privileged to practice law in this Commonwealth." *Wajert v. State Ethics Comm'n,* 491 Pa. 255, 420 A.2d 439, 442 (1980). The General Assembly has no authority under the Pennsylvania Constitution to regulate the conduct of lawyers in the practice of law. Thus, we conclude that any application of the UTPCPL to the facts of this case would purport to regulate the conduct of attorneys and would be an impermissible encroachment upon the power of this Court.[20]

**20.** We are further persuaded by the reasoning of the Delaware Superior Court in *Jamgochian v. Prousalis,* 2000 WL 1610750, 2000 Del.Super. Lexis 373 (Del.Super.2000). The Delaware Superior Court in *Jamgochian* expressed its opinion regarding the inherent constitutional authority of the Delaware Supreme Court to regulate attorney conduct in that state. The court opined as follows:

The Supreme Court is granted the authority to regulate the court system for the efficient administration of justice, including the attorneys who practice before the bench. Constitution of the State of Delaware (1897), Art. IV, § 13; 10 Del. C. § 1906. Control of the

■ We hold Pennsylvania's Rules of Professional Conduct and Rules of Disciplinary Enforcement exclusively address the conduct complained of in this case. Specifically, Pa.R.P.C. 1.5(c) provides that "[u]pon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination." Pa.R.P.C. 1.15(b) provides that upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. "Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and upon request by the client or third person, shall promptly render a full accounting regarding such property." Pa.R.P.C. 8.4(b) provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects

Bar by the Court is an ancient vestige of our legal system, derived from the common law of England. This power to regulate admission to and discipline of the Bar is inherent in the highest court of this state, "independent of any statutory grant of authority." According to the Supreme Court, the provisions of 10 Del. C. § 1906 "are nothing more than legislative recognition of the inherent powers of this Court." In deference to the long tradition and further recognition of the intrinsic powers of the Court, the legislature has not undertaken regulation of the Bar by statute. *Jamgochian,* 2000 WL 1610750 at *4, 2000 Del.Super. Lexis at *11–12 (internal citations omitted) (footnote omitted). Inherent in the power of the Delaware Supreme Court is the power to regulate every aspect of the practice of law.

Pursuant to this authority, the Court has promulgated rules governing the admission and conduct of attorneys as well as providing for the sanctioning of lawyers in violation of these regulations.... Every aspect of a lawyer's practice is encompassed by these rules. Everything from admission procedures to responsibilities of an attorney leaving practice are regulated. Advertising, accounting of client funds, communication with clients, dealings with third parties, competence of the attorney, conflicts of interest, and the unauthorized practice of law are among the myriad subjects that these comprehensive rules contemplate. The penalty for attorney misconduct in violation of these rules may range from censure to fines to disbarment, subject to the recommendations of the Office of Disciplinary Counsel.

*Id.* at *4, 2000 Del.Super. Lexis at *13–14 (footnote omitted).

adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Pa.R.P.C. 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

In addition, this Court promulgated Rule 1.15 of the Pennsylvania Rules of Professional Conduct, which governs attorneys' disposition of client funds, directs the safekeeping of a client's property and authorized the creation of the Interest on Lawyers' Trust Account Act. 62 P.S. § 4023. And Pa.R.D.E. 514 addresses the issue of reimbursable losses of money caused by the dishonest conduct of an attorney.[21]

**21.** Rule 514 provides as follows:

(a) **General Rule.** For the purposes of this subchapter reimbursable losses consist of those losses of money, property or other things of value which meet all of the following requirements:

(1) The loss was caused by the dishonest conduct of a covered attorney when acting:

(i) as an attorney-at-law;

(ii) in a fiduciary capacity customary to the practice of law, such as administrator, executor, trustee of an express trust, guardian or conservator; or

(iii) as an escrow agent or other fiduciary, having been designated as such by a client in the matter in which the loss arose or having been so selected as a result of a client-attorney relationship.

(2) The loss was that of money, property or other things of value which came into the hands of the covered attorney by reason of having acted in the capacity described in paragraph (1) of this subdivision.

(3) The loss, or the reimbursable portion thereof, was not covered by any insurance or by any fidelity or similar bond or fund, whether of the covered lawyer, or the claimant or otherwise.

(4) The loss was not incurred by:

(i) the spouse or other close relative, partner, associate, employer or employee of the covered attorney, or a business entity controlled by the covered attorney, or any entity controlled by any of the foregoing;

(ii) an insurer, surety or bonding agency or company, or any entity controlled by any of the foregoing; or

(iii) any government unit.

(5) A payment from the fund, by way of subrogation or otherwise, will not benefit any entity specified in paragraph (4) of this subdivision.

(b) **Maximum Recovery.** The maximum amount which may be disbursed from the fund to any one claimant with respect to the dishonest conduct of any one covered attorney shall be $ 75,000.

These Rules, promulgated by this Court, provide the exclusive remedy for the attorney misconduct in this case. We hold appellants' conduct in collecting and distributing settlement proceeds does not fall within the purview of the UTPCPL, but rather within this Court's exclusive regulatory powers. Although we are extremely disturbed by the conduct of the appellants in this case, we cannot permit the trial court's award in this case to stand.[22] We reverse the order of the Superior Court.

Reversed. Jurisdiction relinquished.

Justice CASTILLE and Justice BALDWIN join the opinion.

Chief Justice CAPPY files a concurring opinion in which Justice BAER joins.

Justice SAYLOR files a dissenting opinion.

Justice EAKIN files a dissenting opinion.

Chief Justice CAPPY concurring.

I agree with the majority, to the extent that it holds that as a matter of statutory construction, the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa.C.S. §§ 201–1 *et seq.,* does not apply to attorneys practicing law. *See* 1 Pa.C.S. § 1501 *et seq.* I disassociate myself from the remainder of the opinion. Because the issue of the UTPCPL's applicability is resolved on statutory grounds, any discussion of the constitutional grounds for the majority's holding is unnecessary. *See P.J.S. v. Pennsylvania State Ethics Com'n,* 555 Pa. 149, 723 A.2d 174, 176 (1999) ("[A] court should not reach the constitutional issue if the case can properly be decided on non-constitutional grounds.").

Justice BAER joins this concurring opinion.

---

**22.** As a result of our disposition of this issue, we need not address the other issues raised by appellants.

Justice SAYLOR dissenting.

I Join Mr. Justice Eakin's dissenting opinion and additionally note that core functions of legal representation were not implicated by Appellant's ancillary activity regarding the handling of the settlement proceeds. As this conduct does not involve the exercise of legal judgment, *see generally Dauphin County Bar Ass'n v. Mazzacaro*, 465 Pa. 545, 553, 351 A.2d 229, 233 (1976) (discussing the boundaries of the "practice of law" in terms of understanding and applying legal principles and judgment), it falls more comfortably within the business aspects of the activities of a law firm, a distinction recognized by other courts. *See, e.g., Short v. Demopolis*, 103 Wash.2d 52, 691 P.2d 163, 168 (1984) (ruling that the Washington consumer protection statute applied to "certain entrepreneurial aspects of the practice of law," including "how the price of legal services is determined, billed, and collected"); *Daniels v. Baritz*, 2003 WL 21027238, at *6 (E.D.Pa. Apr. 30, 2003) (distinguishing between a lawyer's actions "arising out of the actual practice of law" and his debt-collection practices, and holding that a claim that the latter activities violated the UTPCPL survived preliminary objections); *cf. Goldfarb v. Virginia State Bar*, 421 U.S. 773, 787–88, 95 S.Ct. 2004, 2013–14, 44 L.Ed.2d 572 (1975) (observing that the exchange of an attorney's services in examining a land title for money constitutes "commerce" for purposes of the Sherman Act and, as such, is a "business aspect" of the legal profession). *But cf. Cripe v. Leiter*, 184 Ill.2d 185, 234 Ill.Dec. 488, 703 N.E.2d 100, 102 (1998) (holding that the Illinois Consumer Fraud Act did not apply to a plaintiff's claim that her attorney charged excessive fees).

Justice EAKIN dissenting.

I dissent because I believe the Unfair Trade Practices and Consumer Protection Law (UTPCPL) applies here.

This Commonwealth's Constitution vests this Court with the responsibility of supervising the practice of law. "While this Court has guarded this power from the encroachment of the General Assembly on numerous occasions, it has also rejected

calls for unrealistic micromanagement over provisions of general applicability." *Shaulis v. Pennsylvania State Ethics Commission*, 574 Pa. 680, 833 A.2d 123, 134 (2003) (Eakin, J., concurring and dissenting) (citing *PJS v. Pennsylvania State Ethics Commission*, 555 Pa. 149, 723 A.2d 174 (1999); *Maunus v. Pennsylvania State Ethics Commission*, 518 Pa. 592, 544 A.2d 1324 (1988)). In *PJS*, we explained:

> The exclusive jurisdiction of this [C]ourt is infringed when another branch of government attempts to regulate the conduct of attorneys merely because of their status as attorneys. However, the jurisdiction of this [C]ourt is not infringed when a regulation aimed at conduct is applied to all persons, and some of those persons happen to be attorneys.

*PJS*, at 178.

The UTPCPL is not a law directed at regulating attorneys; rather, it is a law of general applicability. Appellants should not be exempted from the reach of the UTPCPL simply because of their status as attorneys. Accordingly, I dissent.